1  SEYFARTH SHAW LLP
Diana Tabacopoulos (SBN 128238)
2  E-mail: dtabacopoulos@seyfarth.com
Jessica C. Koenig (SBN 340974)
3  E-mail: jkoenig@seyfarth.com
2029 Century Park East, Suite 3500
4  Los Angeles, California 90067-3021
Telephone: (310) 277-7200
5  Facsimile: (310) 201-5219

6  Attorneys for Defendant
STV INCORPORATED
7

8

9  UNITED STATES DISTRICT COURT

10  CENTRAL DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| 12  JAMAL AL MASHAT, an individual, ALBERD GHARIBIAN, an individual, and MUNA AL MASHAT, an individual,<br>13<br>14  Plaintiffs,<br>15  v.<br>16  STV INCORPORATED, a California Corporation; and DOES 1 through 10,<br>17<br>18  Defendants.<br>19 | Case No. _____<br><br>**DEFENDANT STV INCORPORATED'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**<br><br>[Los Angeles County Superior Court, Case No. 22STCV25069]<br><br>Complaint Filed: August 3, 2022<br>Trial Date: None Set |

20

21

22

23

24

25

26

27

28

DEFENDANT STV INCORPORATED'S NOTICE OF REMOVAL OF CIVIL ACTION

86182017v.2

# **TABLE OF CONTENTS**

Page

I.    BACKGROUND ...................................................................................... 1

II.   TIMELINESS OF REMOVAL ................................................................ 2

III.  JURISDICTION BASED ON DIVERSITY OF CITIZENSHIP ................... 3

      A.    Plaintiffs Are Citizens Of California ............................................ 3

      B.    Defendant Is Not A Citizen of California ...................................... 5

      C.    Doe Defendants May Be Disregarded ........................................... 6

IV.   AMOUNT IN CONTROVERSY ................................................................ 6

      A.    Plaintiffs' Individual Claims Each Exceed $75,000 ...................... 8

      B.    Economic Damages ...................................................................... 8

      C.    Waiting Time Penalties ............................................................... 11

      D.    Emotional Distress Damages ...................................................... 12

      E.    Attorney's Fees and Costs .......................................................... 13

      F.    Punitive Damages ....................................................................... 15

V.    VENUE ................................................................................................. 17

VI.   SERVICE OF NOTICE OF REMOVAL ON PLAINTIFFS AND THE
      CLERK OF THE SUPERIOR COURT ....................................................... 17

VII.  PRAYER FOR REMOVAL ....................................................................... 17

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*City of Clarksdale v. BellSouth Telecomms., Inc.,*
   428 F.3d 206 (5th Cir. 2005)..................................................................3

*Conrad Assocs. v. Hartford Accident & Indem. Co.,*
   994 F. Supp. 1196 (N.D. Cal. 1998)........................................................7

*Crangle v. Stanford Univ.,*
   JVR No. 802904, 2000 WL 33727181 (N.D. Cal. 2000)........................16

*Davenport v. Mut. Benefit Health & Accident Ass'n,*
   325 F.2d 785 (9th Cir. 1963)............................................................7, 15

*Davis v. HSBC Bank Nevada, N.A.,*
   557 F.3d 1026 (9th Cir. 2009)................................................................5

*Emrich v. Touche Ross & Co.,*
   846 F.2d 1190 (9th Cir. 1988)................................................................6

*Fristoe v. Reynolds Metals, Co.,*
   615 F.2d 1209 (9th Cir. 1980)................................................................6

*Galt G/S v. JSS Scandinavia,*
   142 F. 3d 1150 (9th Cir. 1998)........................................................7, 14

*Garfias v. Team Industrial Services,*
   2017 WL 4512444 (C.D. Cal. Oct. 10, 2017) ......................................13

*Gaus v. Miles, Inc.,*
   980 F.2d 564 (9th Cir. 1992)..................................................................7

*Harris v. Bankers Life & Cas. Co.,*
   425 F.3d 689 (9th Cir. 2005)..................................................................2

*Ibarra v. Manheim Investments, Inc.,*
   775 F.3d 1193 (9th Cir. 2015)................................................................6

*Jackson v. Compass Group USA, Inc.,*
   2019 WL 3493991 (C.D. Cal. July 31, 2019) ......................................13

*Kanter v. Warner-Lambert Co.,*
   265 F.3d 853 (9th Cir. 2001)..................................................................3

*Kantor v. Wellesley Galleries, Ltd.,*
   704 F.2d 1088 (9th Cir. 1983)................................................................3

*Kenny v. Wal-Mart Stores, Inc.,*
   881 F.3d 786 (9th Cir., Feb. 1, 2018)......................................................2

DEFENDANT STV INCORPORATED'S NOTICE OF REMOVAL OF CIVIL ACTION

86182017v.2

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*,
   526 U.S. 344 (1999) ................................................................. 2

*Peacock v. Quest Diagnostics*,
   2010 WL 6806990 (C.D. Cal.) ................................................. 12

*Roth v. CHA Hollywood Med. Ctr., L.P.*,
   720 F.3d 1121 (9th Cir. 2013) .................................................. 2

*Sanchez v. Monumental Life Ins.*,
   102 F.3d 398 (9th Cir. 1996) ............................................... 7, 8

*State Farm Mut. Auto Ins. Co. v. Dyer*,
   19 F.3d 514 (10th Cir. 1994) .................................................... 4

*State Farm Mutual Automobile Insurance Co. v. Campbell*,
   538 U.S. 408 (2003) ............................................................... 15

*The Hertz Corp. v. Friend*,
   130 S. Ct. 1181 (2010) ............................................................. 5

*Urbino v. Orkin Servs. of Cal., Inc.*,
   726 F.3d 1118 (9th Cir. 2013) .................................................. 6

*Valdez v. Allstate Ins. Co.*,
   372 F.3d 1115 (9th Cir. 2004) .................................................. 7

*Ward v. Cadbury Schweppes Bottling Grp.*,
   2011 WL 7447633 (C.D. Cal) .................................................. 12

**State Cases**

*Davis v. Robert Bosch Tool Corp.*,
   2007 WL 2014301 (Cal. Ct. App. July 13, 2007) ...................... 14

*Horsford v. Bd. of Trs. of Cal. State Univ.*,
   132 Cal. App. 4th 359 (2005) .................................................. 14

*Kelley v. Merle Norman Cosmetics, Inc.*,
   2015 WL 9584679 (Cal. Ct. App. Dec. 30, 2015) .................... 10

*Lane v. Hughes Aircraft Co.*,
   22 Cal. 4th 405 (2000) ............................................................ 15

*Roby v. McKesson Corp.*,
   47 Cal. 4th 686 (2009) ............................................................ 16

**Federal Statutes**

28 U.S.C. 1332(c)(1) .................................................................. 5

28 U.S.C. § 1332 .................................................................... 1, 6

28 U.S.C. § 1332(a) ........................................................... 3, 7, 16

iii

28 U.S.C. § 1332(a)(1) ............................................................................. 3, 16

28 U.S.C. § 1332(c)(1) ................................................................................... 5

28 U.S.C. § 1441(a) ......................................................................... 1, 3, 6, 17

28 U.S.C. § 1441(b) ....................................................................................... 1

28 U.S.C. § 1446 ............................................................................................ 2

28 U.S.C. § 1446(a) ..................................................................................... 17

28 U.S.C. § 1446(b) ....................................................................................... 3

28 U.S.C. § 1446(d) ..................................................................................... 17

Fair Employment and Housing Act .............................................................. 14

**State Statutes**

Cal. Civ. Proc. Code § 415.10 ....................................................................... 3

Cal. Lab. Code § 203(a) ............................................................................... 11

California Government Code § 12965(b) ...................................................... 14

**Other Authorities**

*Aboulafia v. GACN Inc.*,
2013 WL 8115991 (Los Angeles Sup. Ct.) ........................................ 12

*Behar v. Union Bank*,
Los Angeles Superior Court, Case No. BC427993 (April 9, 2013
verdict) ................................................................................................ 11

*Carroll v. Armstrong*,
34-2012-00135527-CU-OE-GDS, 2016 WL 7094518 (Sacramento
County Sup. Ct. Aug. 10, 2016) .......................................................... 10

*Cochran v. CBS Corporation*,
BC432836, 2012 WL 6708605 (Los Angeles Sup. Ct. Nov. 21,
2012) .................................................................................................... 11

*Crawford v. DIRECTV, Inc.*,
2010 WL 5383296 (Los Angeles Sup. Ct.) ........................................ 14

*Denenberg v. Cal. Dep't of Transp.*,
2006 WL 5305734 (San Diego County Sup. Ct.) ............................... 14

*Hawkins v. City of Los Angeles*,
2016 WL 8649664 (Los Angeles County Sup. Ct. Jun. 17, 2016) .... 10

*Hoeper v. City and County of San Francisco*,
CGC-15-543553, 2017 WL 1136098 (San Francisco County Sup.
Ct. Mar. 17, 2017) .............................................................................. 10

*Leggins v. Thrifty Payless, Inc.,*
  BC511139, 2015 WL 4748037 ........................................................ 16

*Liemandt v. Mega RV Corp.,*
  2011 WL 2912831 (Orange County Sup. Ct.) .................................. 12

*McMillan v. City of Los Angeles,*
  Los Angeles County Sup. Ct. Case No. BC298898 (March 21, 2005
  verdict) ............................................................................................. 14

*Moland v. McWane Inc.,*
  BC559796, 2017 WL 3393489 (Los Angeles County Sup. Ct. June
  29, 2017) .......................................................................................... 15

*Sargent v. Board of Trustees of Cal. State Univ.,*
  2017 WL 2617753 (Sonoma County Sup. Ct. Mar. 15, 2017) .......... 10

*Scricca v. The Regents of the University of California,*
  2019 WL 12021657 (Orange County Sup. Ct.) ................................ 14

*Shirvanyan v. Los Angeles Community College District,*
  2018 WL 896823 (Los Angeles Sup. Ct.) ........................................ 14

*Silverman v. Stuart F. Cooper Inc.,*
  2013 WL 5820140 (Los Angeles Sup. Ct.) ...................................... 12

*Thompson v. Big Lots Stores, Inc.,* No. 1:16-cv-01464-LJO-JLT,
  2017 WL 590261 (E.D. Cal. Feb. 13, 2017) .................................... 15

*Vasquez v. Los Angeles Cnty. Metro. Transp. Auth.,*
  2013 WL 7852947 (Los Angeles Sup. Ct.) ...................................... 12

*Welch v. Ivy Hill Corp.,*
  2011 WL 3293268 (Los Angeles Sup. Ct.) ................................ 12, 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANT STV INCORPORATED'S NOTICE OF REMOVAL OF CIVIL ACTION

86182017v.2

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFFS JAMAL AL-MASHAT, ALBERD GHARIBIAN, AND MUNA AL-MASHAT AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant STV Incorporated ("Defendant"), a corporation organized and existing under the laws of the State of New York with its headquarters and principal place of business in the State of New York, hereby files this notice of removal pursuant to 28 U.S.C. sections 1332 and 1441(a) and (b), based on diversity of citizenship jurisdiction, in order to remove the above-captioned action from the Superior Court for the County of Los Angeles to the United States District Court for the Central District of California, and states that the removal is proper for the following reasons:

## I.   BACKGROUND

1.    On August 3, 2022, Plaintiffs Jamal Al-Mashat, Alberd Gharibian, and Muna Al-Mashat (collectively, "Plaintiffs") filed a Complaint in the Superior Court of California for the County of Los Angeles, entitled "*JAMAL AL MASHAT, an individual, ALBERD GHARIBIAN, an individual, and MUNA AL MASHAT, an individual, Plaintiffs, vs. STV, INC., a California Corporation, and DOES 1-10, Defendants,*" Case No. 22STCV25069 ("Complaint").  A true and correct copy of the Complaint is attached to this Notice of Motion as **Exhibit A**.

2.    In the Complaint, Plaintiffs assert nine causes of action against Defendant for: (1) "Wrongful Termination"; (2) "Violation of Labor Code § 1102.5"; (3) "Race, National Origin, Ancestry Discrimination"; (4) "Race, National Origin, Ancestry Harassment"; (5) "Age Discrimination"; (6) "Failure to Prevent Discrimination and Harassment"; (7) "Failure to Pay Wages Due on Termination"; (8) "Unfair Competition"; and (9) "Violation of Labor Code §§ 432 and 1198.5."

3.     On August 31, 2022, Defendant timely filed its Answer to Plaintiffs' Complaint in Los Angeles Superior Court.  A true and correct copy of Defendant's Answer to Plaintiffs' Complaint is attached to this Notice of Motion as **Exhibit B**.

4.     Defendant has not filed or received any other pleadings or papers, other than the pleadings described as **Exhibit A** and **Exhibit B**, in this action prior to this Notice of Removal.  (Declaration of Diana Tabacopoulos ("Tabacopoulos Decl."), ¶ 2.)

## II.     TIMELINESS OF REMOVAL

5.     On August 4, 2022, Defendant received, via process server, the Summons, the Complaint, the Civil Case Cover Sheet and Addendum, and the Alternate Dispute Resolution Information Package.  (Declaration of Thomas Butcher ("Butcher Decl."), ¶ 7; *see also* Ex. A.)

6.     The time for filing a Notice of Removal does not begin to run until a party has been formally served with the summons and complaint under the applicable state law "setting forth the claim for relief upon which such action or proceeding is based" or, if the case stated by the initial pleading is not removable, after receipt of any "other paper from which it may be first ascertained that the case is one which is or has become removable."  28 U.S.C. § 1446; *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (holding that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint"); *Kenny v. Wal-Mart Stores, Inc.*, 881 F.3d 786, 791 (9th Cir., Feb. 1, 2018) ("We have also emphasized that 'a defendant does not have a duty of inquiry if the initial pleading or other document is 'indeterminate' with respect to removability.'  *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013) (citing *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 693-94 (9th Cir. 2005)).  Accordingly, 'even if a defendant could have discovered grounds for removability through investigation, it does not lose the right to remove because it

DEFENDANT STV INCORPORATED'S NOTICE OF REMOVAL OF CIVIL ACTION

86182017v.2

1  did not conduct such an investigation and then file a notice of removal within thirty

2  days of receiving the indeterminate document.'").

3     7.     The service of process which triggers the 30-day period to remove is

4  governed by state law.  *City of Clarksdale v. BellSouth Telecomms., Inc.*, 428 F.3d

5  206, 210 (5th Cir. 2005) ("Although federal law requires the defendant to file a

6  removal motion within thirty days of service, the term 'service of process' is

7  defined by state law.").

8     8.     This Notice of Removal is timely, as it is being filed within thirty (30)

9  days of service of the Summons and Complaint on August 4, 2022, and within one

10 year of the commencement of this action.  28 U.S.C. § 1446(b); Cal. Civ. Proc.

11 Code § 415.10 ("A summons may be served by personal delivery of a copy of the

12 summons and of the complaint to the person to be served.  Service of a summons in

13 this manner is deemed complete at the time of such delivery").

14 **III.    JURISDICTION BASED ON DIVERSITY OF CITIZENSHIP**

15    9.     The Court has original jurisdiction of this action under 28 U.S.C.

16 section 1332(a)(1).  As set forth below, this action is removable pursuant to the

17 provisions of 28 U.S.C. section 1332(a) as the amount in controversy for each

18 individual Plaintiff's claims exceed $75,000, exclusive of interest and costs, and is

19 between citizens of different states.  Accordingly, this action is removable under 28

20 U.S.C. section 1441(a).

21    **A.    Plaintiffs Are Citizens Of California**

22    10.    Diversity exists between "citizens of different States."  28 U.S.C.

23 section 1332(a)(1).  For diversity purposes, a person is a "citizen" of the state in

24 which he or she is domiciled.  *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088,

25 1090 (9th Cir. 1983).  A person's domicile is the place he or she resides with the

26 intent to remain indefinitely.  *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857

27 (9th Cir. 2001).  Plaintiffs' allegations in the Complaint that they are residents of

28 the State of California is *prima facie* evidence of domicile, and therefore Plaintiffs

3

1    are citizens of the State of California.  *State Farm Mut. Auto Ins. Co. v. Dyer*, 19

2    F.3d 514, 520 (10th Cir. 1994) (holding that "the place of residence is prima facie

3    [evidence of] domicile").

4         11.    Plaintiff Jamal Al-Mashat is and, at all times since the commencement

5    of this action has been, a resident and citizen of the State of California.  The

6    Complaint alleges that, "[a]t all times relevant, Jamal Al Mashat was and now is an

7    adult residing in the County of Los Angeles in the State of California."  (*See* Ex. A,

8    Compl., ¶ 5.)

9         12.    Plaintiff Alberd Gharibian is and, at all times since the commencement

10   of this action has been, a resident and citizen of the State of California.  The

11   Complaint alleges that, "[a]t all times relevant, Alberd Gharibian was and now is an

12   adult residing in the County of Los Angeles in the State of California."  (*See* Ex. A,

13   Compl., ¶ 6.)

14        13.    Plaintiff Muna Al-Mashat is and, at all times since the commencement

15   of this action has been, a resident and citizen of the State of California.  The

16   Complaint alleges that, "[a]t all times relevant, Muna Al Mashat was and now is an

17   adult residing in the County of Los Angeles in the State of California."  (*See* Ex. A,

18   Compl., ¶ 7.)

19        14.    Plaintiffs' domicile in California is confirmed by a public records

20   search through August 26, 2022.  Those searches show that at all time relevant

21   Plaintiffs have had addresses in Los Angeles county in zip codes 91326 and 91352.

22   The LexisNexis records do not show addresses for Plaintiffs other than in the State

23   of California during their employment with Defendant or thereafter.  (*See*

24   Tabacopoulos Decl., ¶¶ 3-5, Exs. C-E.)  In addition, Defendant's personnel records

25   reflect that Plaintiffs maintained addresses in California at all times during their

26   employment with Defendant.  (Declaration of Judith Mills-Brown ("Mills-Brown

27   Decl."), ¶¶ 6, 8, 10.)

28

DEFENDANT STV INCORPORATED'S NOTICE OF REMOVAL OF CIVIL ACTION

86182017v.2

15.     Plaintiffs, therefore, are, and at all times since the commencement of this action have been, residents and citizens of the State of California.

**B.     Defendant Is Not A Citizen of California**

16.     Defendant is now and, at all times since the commencement of this action has been, a citizen of a State other than California within the meaning of 28 U.S.C. section 1332(c)(1).  For diversity purposes, "a corporation is a citizen of (1) the state under whose laws it is organized or incorporated; and (2) the state of its 'principal place of business.'"  *Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1028 (9th Cir. 2009) (citing 28 U.S.C. 1332(c)(1)).

17.     The United States Supreme Court in *The Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010), held that a corporate entity's "principal place of business" for determining its citizenship is its "nerve center":

> We conclude that "principal place of business" is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's "nerve center."  And in practice it should normally be the place where the corporation maintains its headquarters -- provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the "nerve center." *The Hertz Corp.*, 130 S. Ct. at 1192.

18.     Defendant is incorporated under the laws of the State of New York. (Butcher Decl., ¶ 5.)  Further, as shown below, Defendant's principal place of business is, and has been at all times since this action commenced, located in the State of New York.  (*Id*., at ¶ 6.)

19.     Pursuant to *Davis*, 557 F.3d at 1029 and *The Hertz Corp.*, 130 S. Ct. at 1192, Defendant's principal place of business is in New York because its "nerve center" is located in that state.  Defendant's corporate headquarters is located in New York, New York where Defendant's high level officers direct, control, and coordinate its activities.  (Butcher Decl., ¶ 6.)  Defendant's high level corporate officers and executives, including its Chief Executive Officer and President, Chief

5

1    Operating Officer, General Counsel and Executive Vice President of Defendant's
2    Transportation and Infrastructure Division (to which all three Plaintiffs were
3    assigned), all maintain offices in New York, New York, from which they manage
4    Defendant's executive and administrative operations, including operations relating
5    to the administration of company-wide policies and procedures, legal affairs,
6    human resources, information systems, and general business operations. (*Id.*)

7        20.    Therefore, for purposes of diversity of citizenship, Defendant is, and
8    has been at all times since this action commenced, a citizen of the State of New
9    York and diversity exists between Plaintiffs and Defendant.

10       **C.    Doe Defendants May Be Disregarded**

11       21.    Pursuant to 28 U.S.C. Section 1441(a), the residence of fictitious and
12   unknown defendants should be disregarded for purposes of establishing removal
13   jurisdiction under 28 U.S.C. section 1332. *Emrich v. Touche Ross & Co.*, 846 F.2d
14   1190, 1191 n.1 (9th Cir. 1988) (doe defendants need not join in removal); *Fristoe v.*
15   *Reynolds Metals, Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants
16   are not required to join in a removal petition). Thus, Doe Defendants 1 through 10
17   do not deprive this Court of jurisdiction.

18   **IV.   AMOUNT IN CONTROVERSY**

19       22.    Where, as here, it is unclear from the face of the complaint whether the
20   amount in controversy exceeds $75,000, "the removing defendant bears the burden
21   of establishing, by a preponderance of the evidence, that the amount in controversy
22   exceeds the jurisdictional threshold." *Urbino v. Orkin Servs. of Cal., Inc.*, 726 F.3d
23   1118, 1121-22 (9th Cir. 2013) (internal quotation marks and citations omitted). A
24   removing defendant's notice of removal "need not contain evidentiary submissions"
25   but only plausible allegations of the jurisdictional elements. *Ibarra v. Manheim*
26   *Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

27       23.    While Defendant denies any liability as to Plaintiffs' claims, the
28   amount in controversy requirement is satisfied because "it is more likely than not"

6

1  that the amount of each individual Plaintiff's claims exceed the jurisdictional

2  minimum of $75,000.  *See Sanchez v. Monumental Life Ins.*, 102 F.3d 398, 403-04

3  (9th Cir. 1996) ("[T]he defendant must provide evidence establishing that it is

4  'more likely than not' that the amount in controversy exceeds [the threshold]

5  amount.") (internal quotations and citations omitted).

6         24.    As explained by the Ninth Circuit, "the amount-in-controversy inquiry

7  in the removal context is not confined to the face of the complaint."  *Valdez v.*

8  *Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (finding that the Court may

9  consider facts presented in the removal petition).  When the amount in controversy

10 is not apparent from the face of the complaint, a defendant may state underlying

11 facts supporting its assertion that the amount in controversy exceeds the

12 jurisdictional threshold.  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566-67 (9th Cir. 1992).

13        25.    In determining the amount in controversy, the Court must consider the

14 aggregate of general damages, special damages, punitive damages, and attorneys'

15 fees.  *Galt G/S v. JSS Scandinavia*, 142 F. 3d 1150, 1156 (9th Cir. 1998) (claims for

16 statutory attorneys' fees to be included in amount in controversy, regardless of

17 whether such an award is discretionary or mandatory); *Davenport v. Mut. Benefit*

18 *Health & Accident Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963) (punitive damages

19 must be taken into account where recoverable under state law); *Conrad Assocs. v.*

20 *Hartford Accident & Indem. Co.*, 994 F. Supp. 1196, 1198 (N.D. Cal. 1998)

21 ("amount in controversy" includes claims for general and special damages,

22 including attorneys' fees and punitive damages).

23        26.    Here, the general and special damages sought by each individual

24 Plaintiff, along with the statutory penalties, attorneys' fees, and punitive damages

25 that might be awarded to each Plaintiff if they prevail, establishes by a

26 preponderance of the evidence that the amount in controversy for each Plaintiff's

27 separate and distinct claims exceed $75,000, exclusive of interest and costs, as

28 required by 28 U.S.C. § 1332(a).

7

86182017v.2

**A.   Plaintiffs' Individual Claims Each Exceed $75,000**

27.   The amount in controversy requirement is satisfied because "it is more likely than not" that each of the Plaintiff's claims exceed the jurisdictional minimum based on the allegations in Plaintiffs' Complaint.  *See Sanchez*, 102 F.3d at 404.

28.   Plaintiffs' Complaint alleges nine causes of action against Defendant for each Plaintiff: (1) "Wrongful Termination"; (2) "Violation of Labor Code § 1102.5"; (3) "Race, National Origin, Ancestry Discrimination"; (4) "Race, National Origin, Ancestry Harassment"; (5) "Age Discrimination"; (6) "Failure to Prevent Discrimination and Harassment"; (7) "Failure to Pay Wages Due on Termination"; (8) "Unfair Competition"; and (9) "Violation of Labor Code §§ 432 and 1198.5." Plaintiffs pray for economic, general, and punitive damages, civil penalties, attorneys' fees, and costs of suit.  (*See* Ex. A, Compl., Prayer for Relief, ¶¶ a-j.) Thus, it is more likely than not that the amount-in-controversy for each individual Plaintiff's claims exceed $75,000.

**B.   Economic Damages**

29.   Plaintiff Jamal Al-Mashat was employed as a Senior Project Manager by Defendant from October 29, 2019 to February 1, 2022.  (Ex. A, Compl., ¶ 22; Mills-Brown Decl., ¶ 5.)

30.   Plaintiff Alberd Gharibian was employed as a Senior Engineer by Defendant from January 16, 2020 until February 1, 2022.  (Ex. A, Compl., ¶ 22; Mills-Brown Decl., ¶ 7.)

31.   Plaintiff Muna Al-Mashat was recruited to re-join Defendant as a Senior Designer from 2020 to February 1, 2022, after having worked for Defendant as a Designer from April 1994 to July 2007.  (Ex. A, Compl., ¶ 23; Mills-Brown Decl., ¶ 9.)

32.   As a result of their alleged wrongful termination, Plaintiffs allege that "they have suffered and will suffer harm, including lost past and future income and

8

employment benefits, damage to their career, and lost wages, benefits, and applicable penalties, as well as interest on unpaid wages . . . ." (Ex. A, Compl., ¶ 47, Prayer for Relief, ¶ a.)

33.     At the time of his termination, Plaintiff Jamal Al-Mashat earned an annualized salary of $205,587.20. (Mills-Brown Decl., ¶ 5.)  Given that Plaintiff Jamal Al-Mashat alleges that he was wrongfully terminated on February 1, 2022, he has already incurred over seven months of lost compensation to date.  (Ex. A, Compl., ¶ 47.)  Accordingly, Plaintiff  Jamal Al-Mashat has already incurred at least $118,608.00 of lost compensation (weekly salary rate of $3,953.60 X 30 weeks (February 1, 2022 to September 1, 2022)).  Assuming a conservative trial date of one year after Plaintiff Jamal Al-Mashat's filing of the Complaint, over 76 weeks will have elapsed since his termination, bringing the amount of lost compensation to approximately **$300,473.60**.

34.     At the time of his termination, Plaintiff Alberd Gharibian earned an annualized salary of $161,532.80. (Mills-Brown Decl., ¶ 7.)  Given that Plaintiff alleges that he was wrongfully terminated on February 1, 2022, he has already incurred over seven months of lost compensation to date.  (Ex. A, Compl., ¶ 47.)  Accordingly, Plaintiff Alberd Gharibian has already incurred at least $93,192 of lost compensation (weekly salary rate of $3,106.40 X 30 weeks (February 1, 2022 to September 1, 2022)).  Assuming a conservative trial date of one year after Plaintiff Alberd Gharibian's filing of the Complaint, over 76 weeks will have elapsed since his termination, bringing the amount of lost compensation to approximately **$236,086.40**.

35.     At the time of her termination, Plaintiff Muna Al-Mashat earned an annual salary of $131,060.80. (Mills-Brown Decl., ¶ 9.)  Given that Plaintiff alleges that she was wrongfully terminated on February 1, 2022, she has already incurred over seven months of lost compensation to date.  (Ex. A, Compl., ¶ 47.)  Accordingly, Plaintiff Muna Al-Mashat has already incurred at least $75,612 of lost

9

compensation (weekly salary rate of $2,520.40 X 30 weeks (February 1, 2022 to September 1, 2022)).  Assuming a conservative trial date of one year after Plaintiff Muna Al-Mashat's filing of the Complaint, over 76 weeks will have elapsed since her termination, bringing the amount of lost compensation to approximately **$191,550.40**.

36.     Additionally, should Plaintiffs prevail at trial, it is more likely than not that they would each recover over $75,000 in damages as there have been, in recent years, several verdicts in similar discrimination and whistleblower retaliation cases entered in favor of plaintiffs in California where the awarded damages exceeded $75,000.  *Hoeper v. City and County of San Francisco*, CGC-15-543553,  2017 WL 1136098 (San Francisco County Sup. Ct. Mar. 17, 2017) ("jury found for the plaintiff and awarded her $601,630 in past lost earnings, $136,318 in future lost earnings, and $1,291,409 for emotional distress, mental anguish and humiliation"); *Sargent v. Board of Trustees of Cal. State Univ.*, 2017 WL 2617753 (Sonoma County Sup. Ct. Mar. 15, 2017) ("jury found in favor of Sargent on his whistleblower retaliation claim, awarding him $152,980 in past economic damages, $118,915 in future economic damages"); *Carroll v. Armstrong*, 34-2012-00135527-CU-OE-GDS, 2016 WL 7094518 (Sacramento County Sup. Ct. Aug. 10, 2016) ("jury found for the plaintiff and awarded her $481,225.00 for past lost earnings, $932,200 for future lost earnings, $681,103 for future pension plan benefits, and $750,000 for emotional distress, pain and suffering"); *Hawkins v. City of Los Angeles*, 2016 WL 8649664, VX541066, (Los Angeles County Sup. Ct. Jun. 17, 2016) (plaintiff "was awarded $88,531 in economic damages and $150,000 in non-economic damages"); *Kelley v. Merle Norman Cosmetics, Inc.*, 2015 WL 9584679, at *4 (Cal. Ct. App. Dec. 30, 2015) ("the jury found Merle Norman liable for retaliation, for failing to prevent retaliation, and for retaliating against plaintiff in violation of Labor Code § 1102.5 … [The] jury awarded plaintiff a total of $1,055,236 -- $293,410 in past economic losses, $401,826 in future economic

10

losses, and $360,000.00 for past economic losses"); *Behar v. Union Bank*, Los Angeles Superior Court, Case No. BC427993 (April 9, 2013 verdict) ($2,563,630 verdict on two plaintiffs' claims for age discrimination and harassment, national origin discrimination and harassment, breach of contract and defamation claims); *Cochran v. CBS Corporation*, BC432836, 2012 WL 6708605 (Los Angeles Sup. Ct. Nov. 21, 2012) (awarding $8,546,384 to former TV game show actress employee who alleged she was retaliated against for making complaints that she was being discriminated against because she was pregnant).

37.     Plaintiffs' whistleblower allegations and allegations that they were discriminated against and discharged because of their national race, origin, ancestry, and age are factually similar to the issues in these cases.  Defendant has attached these cases and verdicts as **Exhibit F** to the concurrently filed Declaration of Diana Tabacopoulos for the Court's review.

## C.     Waiting Time Penalties

38.     Plaintiffs' seventh cause of action seeks penalties for wages not timely paid at the separation of employment.  (Ex. A, Compl., ¶¶ 106-109.)

39.     California Labor Code section 203 provides for penalties of daily wages up to 30 days, if an employer fails to pay all wages due at the time of termination.  *See* Cal. Lab. Code § 203(a) ("If an employer willfully fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days").

40.     Plaintiffs fail to allege the amount of waiting time penalties owed to them.  However, Plaintiffs allege that "Defendant[] willfully failed to pay Plaintiffs all wages due and owing to them upon the termination of their employment, including, but not limited to, accrued sick vacation pay and sick pay, as required by the California Labor Code."  (Ex. A, Compl., ¶ 108.)

11

41.    Based on Plaintiff Jamal Al-Mashat's annualized earnings of $205,587.20, waiting time penalties for 30 days would amount to **$16,897.58**.

42.    Based on Plaintiff Alberd Gharibian's annualized earnings of $161,532.80, waiting time penalties for 30 days would amount to **$13,276.67**.

43.    Based on Plaintiff Muna Al-Mashat's annualized earnings of $131,060.80, waiting time penalties for 30 days would amount to **$10,772.12**.

44.    Without factoring in Plaintiffs' claims for emotional distress, punitive damages and attorneys' fees, discussed below, each Plaintiff's alleged lost wages and penalties exceed the amount-in-controversy requirement.

**D.    Emotional Distress Damages**

45.    Plaintiffs also claim damages for "pain and suffering, mental and emotional trauma and anguish, and for the loss of the enjoyment of the activities of life. . . ."  (*See* Ex. A, Compl., Prayer for Relief, ¶ b.)  A review of jury verdicts in California demonstrates that emotional distress awards in similar discrimination and retaliation cases commonly exceed $75,000.  *See Silverman v. Stuart F. Cooper Inc.*, 2013 WL 5820140 (Los Angeles Sup. Ct.) (jury awarded $157,001 for emotional distress damages in FEHA age discrimination case); *Vasquez v. Los Angeles Cnty. Metro. Transp. Auth.*, 2013 WL 7852947 (Los Angeles Sup. Ct.) (award of $1,250,000 for pain and suffering to employee in discrimination action); *Aboulafia v. GACN Inc.*, 2013 WL 8115991 (Los Angeles Sup. Ct.) (pain and suffering award of $250,000, $250,000, $250,000, and $250,267 to four employees in discrimination action); *Ward v. Cadbury Schweppes Bottling Grp.*, 2011 WL 7447633 (C.D. Cal) (jury award $5,600,000 in non-economic damages in discrimination and retaliation case); *Welch v. Ivy Hill Corp.*, 2011 WL 3293268 (Los Angeles Sup. Ct.) (award of $1,270,000 in pain and suffering to employee in a discrimination action); *Liemandt v. Mega RV Corp.*, 2011 WL 2912831 (Orange County Sup. Ct.) (jury awarded $385,000 in pain and suffering to employee in a discrimination case); *Peacock v. Quest Diagnostics*, 2010 WL 6806990 (C.D. Cal.)

12

86182017v.2

(jury award of $150,000 in non-economic loss to employee in action for discrimination action).

46.     Plaintiffs' allegations of emotional distress are similar to the issues raised in these cases.  Defendant has attached these verdicts as **Exhibit G** to the concurrently filed Declaration of Diana Tabacopoulos for the Court's review.

47.     Courts in this District have concluded that it is appropriate to estimate, conservatively, "a 1:1 ratio between emotional distress damages and economic damages" for purposes of determining the amount in controversy for removal jurisdiction. *Jackson v. Compass Group USA, Inc.*, 2019 WL 3493991, * 6 (C.D. Cal. July 31, 2019).  *See also Garfias v. Team Industrial Services*, 2017 WL 4512444, * 5 (C.D. Cal. Oct. 10, 2017) (denying motion to remand, noting: "it is reasonable to apply a 1:1 ratio to emotional distress and economic damages for purposes of the present jurisdictional analysis.").

48.     Thus, the amount in controversy for Plaintiff Jamal Al-Mashat's claims for emotional distress is between **$300,473.60** (using a 1:1 ratio of his economic damages, to date) and **$1,270,000** (using the verdict from *Welch v. Ivy Hill Corp.*, 2011 WL 3293268).

49.     The amount in controversy for Plaintiff Alberd Gharibian's claims for emotional distress is between **$236,086.40** (using a 1:1 ratio of his economic damages, to date) and **$1,270,000** (using the verdict from *Welch v. Ivy Hill Corp.*, 2011 WL 3293268).

50.     The amount in controversy for Plaintiff Muna Al-Mashat's claims for emotional distress is between **$191,550.40** (using a 1:1 ratio of her economic damages, to date) and **$1,270,000** (using the verdict from *Welch v. Ivy Hill Corp.*, 2011 WL 3293268).

**E.     Attorney's Fees and Costs**

51.     Plaintiffs claim that they are each entitled to attorneys' fees and costs. (*See* Ex. A, Compl., ¶¶ 104, 108, Prayer for Relief, ¶ c.)  Attorneys' fees are

properly considered in calculating the amount in controversy for purposes of removal on grounds of diversity jurisdiction. *Galt G/S*, 142 F.3d at 1156 (claims for statutory attorneys' fees to be included in amount in controversy, regardless of whether such an award is discretionary or mandatory). Under California Government Code § 12965(b), the court in its discretion may award fees and costs to the "prevailing party" in Fair Employment and Housing Act actions. Although the statute provides that the court "may" award fees, cases hold that a prevailing plaintiff is entitled to fees "absent circumstances that would render the award unjust." *Horsford v. Bd. of Trs. of Cal. State Univ.*, 132 Cal. App. 4th 359, 394 (2005).

52. Here, if each Plaintiff is successful, Plaintiffs would each be entitled to an award of attorneys' fees that itself would "more likely than not" exceed $75,000. Verdicts show that attorneys' fees in employment cases typically exceed $75,000. *See Scricca v. The Regents of the University of California*, 2019 WL 12021657 (Orange County Sup. Ct.) (awarding plaintiff attorneys' fees in the amount of $353,609 in a disability and age discrimination action); *Shirvanyan v. Los Angeles Community College District*, 2018 WL 8968231 (Los Angeles Sup. Ct.) (awarding plaintiff attorneys' fees in the amount of $503,274 in a disability discrimination action); *see, e.g.*, *Crawford v. DIRECTV, Inc.*, 2010 WL 5383296 (Los Angeles Sup. Ct.) (approving attorneys' fee award of $159,762.50 in alleged discrimination action); *Davis v. Robert Bosch Tool Corp.*, 2007 WL 2014301, *9 (Cal. Ct. App. July 13, 2007) (individual plaintiff sought $1.6 million in fees); *Denenberg v. Cal. Dep't of Transp.*, 2006 WL 5305734 (San Diego County Sup. Ct.) (attorney's fees award of $490,000 for claims including discrimination case; *McMillan v. City of Los Angeles,* Los Angeles County Sup. Ct. Case No. BC298898 (March 21, 2005 verdict) (attorney's fees award of $504,926 in case alleging discrimination and retaliation for filing lawsuit to redress discrimination).

86182017v.2

53.     Plaintiffs' claims that they are entitled to attorney's fees are factually similar to the issues raised in these cases.  Defendant has attached these cases and verdicts as **Exhibit H** to the concurrently filed Declaration of Diana Tabacopoulos for the Court's review.

### F.     Punitive Damages

54.     Finally, the Court must also consider Plaintiffs' request for punitive damages in determining the amount in controversy.  *Davenport v. Mutual Benefit Health and Accident Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963) (punitive damages must be taken into account where recoverable under state law).  (*See* Ex. A, Compl., Prayer for Relief, ¶ d.)

52.     The economic resources of the defendant and the amount of compensatory damages are two of three factors courts consider in arriving at punitive damage awards.  *See, e.g.*, *Lane v. Hughes Aircraft Co.*, 22 Cal. 4th 405, 417 (2000) (finding "three factors relevant to the assessment of punitive damages: (1) the degree of reprehensibility of the act; (2) the amount of compensatory damages awarded; and (3) the wealth of the particular defendant.").  In *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 427-28 (2003), the Court held that: "The wealth of a defendant cannot justify an otherwise unconstitutional punitive damages award . . . That does not make its use [in determining the constitutionality of punitive damage awards] unlawful or inappropriate; it simply means that this factor cannot make up for the failure of other factors. . . ." (internal citations omitted).  Therefore, the request for punitive damages weighs in favor of establishing the amount in controversy.

55.     Additionally, courts have affirmed jury verdicts exceeding $1,000,000 in punitive damages in alleged discrimination cases.  *See Moland v. McWane Inc.*, BC559796, 2017 WL 3393489 (Los Angeles County Sup. Ct. June 29, 2017) ($13.8 million punitive damages verdict for plaintiff in race discrimination case); *Thompson v. Big Lots Stores, Inc.*, No. 1:16-cv-01464-LJO-JLT, 2017 WL 590261,

15

at *4  (E.D. Cal. Feb. 13, 2017) (citing to cases in which the plaintiffs were awarded punitive damages valued at $2 million and $800,000 for discrimination and retaliation cases under FEHA in finding that defendant "met its burden of showing that punitive damages awards in analogous cases often exceed the jurisdictional minimum on their own"); *see, e.g.*, *Leggins v. Thrifty Payless, Inc.*, BC511139, 2015 WL 4748037 (Los Angeles County Sup. Ct. Jul. 17, 2015 ($5 million punitive damages verdict for plaintiff in race discrimination case); *see, e.g., Roby v. McKesson Corp.*, 47 Cal. 4th 686 (2009); *Crangle v. Stanford Univ.*, JVR No. 802904, 2000 WL 33727181 (N.D. Cal. 2000) (punitive damages award of $200,000 where sole remaining claim was for retaliation based on making complaint of discrimination).

56.     Defendant has attached the cases and verdicts listed above as **Exhibit I** to the concurrently filed Declaration of Diana Tabacopoulos for the Court's review.

57.     Accordingly, Plaintiffs' request for punitive damages shows that it is more likely than not that the amount placed in controversy by their Complaint exceeds $75,000.

58.     In sum, each individual Plaintiff's aggregated recovery on their claims, including compensatory damages such as lost wages and emotional distress damages, attorney's fees, and punitive damages, satisfies the $75,000 jurisdictional threshold.  While Defendant denies any liability as to Plaintiffs' claims, it is "more likely than not" that the amount in controversy in this action for each Plaintiff exceeds $75,000, exclusive of interest and costs, as required by 28 U.S.C. section 1332(a).

59.     Because diversity of citizenship exists between Plaintiffs and Defendant, and the matter in controversy between each Plaintiff and the Defendant is in excess of $75,000.00, this Court has original jurisdiction of the action pursuant to 28 U.S.C. section 1332(a)(1).  This action is therefore proper for removal to this Court.

86182017v.2

## V. VENUE

60. This action originally was brought in the Superior Court of the State of California, County of Los Angeles, which is located within the Central District of the State of California. Therefore, venue is proper in this Court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

## VI. SERVICE OF NOTICE OF REMOVAL ON PLAINTIFFS AND THE CLERK OF THE SUPERIOR COURT

61. Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal will be given promptly to Plaintiffs and, together with a copy of the Notice of Removal, will be filed with the Clerk of the Superior Court of the State of California, County of Los Angeles.

62. This Notice of Removal will be served on counsel for Plaintiffs. A copy of the Proof of Service regarding the Notice of Removal will be filed shortly after these papers are filed and served.

63. In compliance with 28 U.S.C. section 1446(a), true and correct copies of all process, pleadings, and orders filed and/or served in this action are attached as **Exhibit A** and **Exhibit B** to this Notice of Removal.

## VII. PRAYER FOR REMOVAL

64. WHEREFORE, Defendant prays that this civil action be removed from the Superior Court of the State of California, County of Los Angeles, to the United States District Court for the Central District of California.

86182017v.2

1    DATED: September 1, 2022            Respectfully submitted,

2                                              SEYFARTH SHAW LLP

3

4                                           By: */s/ Diana Tabacopoulos*

5                                                Diana Tabacopoulos
Jessica C. Koenig

6                                               Attorneys for Defendant
STV INCORPORATED

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT STV INCORPORATED'S NOTICE OF REMOVAL OF CIVIL ACTION

86182017v.2

# EXHIBIT A

EXHIBIT A

Electronically FILED by Superior Court of California, County of Los Angeles on 08/09/2022 03:39 PM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Perez, Deputy Clerk
22STCV25069

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Maureen Duffy-Lewis

# SCHEIN
### L A W   G R O U P

Joshua D. Schein (State Bar No. 264055)
JSchein@ScheinLawGroup.com
2029 Century Park East, Suite 400
Los Angeles, California 90067
Telephone:      (424) 355-8555
Facsimile:      (424) 355-8087

JASON LIANG (SBN 251235)
Email: jliang@lianglyllp.com
LIANG LY LLP
601 South Figueroa Street, Suite 1950
Los Angeles, California 90017
Telephone:  (213) 262-8000
Facsimile:   (213) 335-7776

Attorneys for Plaintiffs
JAMAL AL MASHAT, ALBERD GHARIBIAN, MUNA AL MASHAT

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| JAMAL AL MASHAT, an individual, ALBERD GHARIBIAN, an individual, and MUNA AL MASHAT, an individual<br><br>Plaintiffs,<br><br>vs.<br><br>STV, INC., a California Corporation, and DOES 1-10<br><br>Defendants. | **COMPLAINT FOR:** 22STCV25069<br><br>1. **Wrongful Termination**<br>2. **Violation of Labor Code 1102.5**<br>3. **Race, National Origin, Ancestry Discrimination**<br>4. **Race, National Origin, Ancestry Harassment**<br>5. **Age Discrimination**<br>6. **Failure to Prevent Discrimination and Harassment**<br>7. **Failure to Pay Wages Due on Termination**<br>8. **Unfair Competition**<br>9. **Violation of Labor Code §§ 432 and 1198.5**<br><br>**REQUEST FOR JURY TRIAL** |

**COMPLAINT**
20

**EXHIBIT A**

SCHEIN LAW GROUP

1    Plaintiffs Jamal Al Mashat, Alberd Gharibian, and Muna Al Mashat ("Plaintiffs"), allege

2   causes of action against Defendants STV, Inc. ("STV") and DOES 1-10 (collectively with STV,

3   "Defendants") as follows:

4                              **INTRODUCTION**

5         1.     This action arises out of the harassment and retaliation against three dedicated

6   employees who dedicated their careers as professional civil engineers and designers, working for

7   public safety.   In or about the fall of 2019, STV sought out and hired Plaintiff Al Mashat and

8   Gharibian, based on their experience and reputations, not only to work on the highly publicized and

9   criticized LA Metro expansion project, but also to ensure that the design process for each phase of

10  the project was completed on time and in accordance with the City of Los Angeles's building

11  requirements.   In or about the beginning of 2020, STV also hired Mrs. Al Mashat to work with

12  STV's Rail Departments.

13        2.     Mr. Al-Mashat (PE) and Mr. Gharibian (PE) were instrumental in preparing

14  Westside Purple Line Extension Project, Section-2 (Century City Constellation Stations), in the

15  Civil Department.   Due in part to Mr. Al-Mashat's and Mr. Gharibian's hard work and dedication,

16  Section-2 of the LA Metro project finished on time, and in accordance with the City's requirements.

17  Upon completion of the Section 2 of the LA Metro project, STV transitioned both Mr. Al-Mashat

18  and Mr. Gharibian to the team overseeing Section-3 (Westwood/UCLA Stations).   Plaintiffs are

19  informed and believe, and on that basis allege that, at the time immediately before their transfer to

20  the team overseeing Section 3, STV was significantly behind schedule and had trouble getting its

21  designs approved by the City.

22        3.     At or around the same time, STV assigned a new manager to Section 3.   That new

23  manager, Robert Holmquist, took an instant disliking to Messrs. Al-Mashat and Gharibian, based

24  on their complaints of unsafe engineering and design practices, and based on their being of Middle

25  Eastern descent.   When the two complained that STV was not following mandatory city standards

26  and safety regulations and threatened to report STV's non-compliance to the City, STV set them

27  up for termination and included Mr. Al Mashat's wife (who was part a different design team at

28  STV, and was often called upon to work overtime) in the process.   As a result, STV turned on the

1  complainers and Mr. Al Mashat's wife, Mrs. Al-Mashat, and manufactured a reason to fire them.

2  The three Plaintiffs were then fired as part of a "RIF," despite having plenty of work to do, and

3  despite STV nearly immediately advertising for their replacements.

4         4.     As set forth herein, due to STV's illegal and retaliatory conduct, the Plaintiffs have

5  suffered financial, reputational, and emotional harm which is ongoing to this day. Defendants

6  chose to terminate the Plaintiffs in a thinly veiled effort to rid STV of the whistleblowing, Middle

7  Eastern, employees, who would expose STV's failure to comply with mandatory safety and

8  engineering guidelines. Defendants' conduct has caused the Plaintiffs to lose not only their

9  position, but their wages, benefits, and reputation, and has harmed their emotional wellbeing.

10                                     **THE PARTIES**

11         5.     At all times relevant, Jamal Al Mashat was and now is an adult residing in the

12  County of Los Angeles in the State of California.

13         6.     At all times relevant, Alberd Gharibian was and now is an adult residing in the

14  County of Los Angeles in the State of California.

15         7.     At all times relevant, Muna Al Mashat was and now is an adult residing in the

16  County of Los Angeles in the State of California.

17         8.     Defendant STV, Inc. was and is, upon information and belief, a California

18  corporation doing business in California, and at all times hereinafter mentioned, an employer whose

19  employees are engaged throughout this county and the State of California.

20         9.     The true names and capacities, whether individual, plural, corporate, partnership,

21  associate or otherwise, of DOES 1 through 10, inclusive, are unknown to Plaintiffs who therefore

22  sue said Defendants by such fictitious names. The full extent of the facts linking such fictitiously

23  sued Defendants is unknown to Plaintiffs. Plaintiffs are informed and believe, and thereupon

24  allege, that each of the Defendants designated herein as a DOE was, and is, negligently, recklessly,

25  and/or intentionally responsible for the events and happenings hereinafter referred to, and thereby

26  negligently, recklessly, and/or intentionally legally and proximately caused the hereinafter

27  described injuries and damages to Plaintiffs. Plaintiffs will hereafter seek leave of the Court to

28  amend this Complaint to show the fictitiously sued Defendants' true names and capacities, after the

SCHEIN LAW GROUP

EXHIBIT A

1    same have been ascertained.

2        10.    At all relevant times, Defendants, and each of them, ratified each and every act or

3    omission complained of herein. At all relevant times, Defendants, and each of them, aided and

4    abetted the acts and omissions of each and all the other Defendants in proximately causing the

5    damages herein alleged.

6        11.    Plaintiffs are informed and believe, and thereon allege, that each of said Defendants

7    is in some manner intentionally, negligently, or otherwise responsible for the acts, omissions,

8    occurrences, and transactions alleged herein.

9                               **JURISDICTION**

10       12.    This Court has personal jurisdiction over Plaintiffs, because of their residence in the

11   County of Los Angeles, State of California.

12       13.    The unlawful acts committed by Defendants, as described in this Complaint,

13   occurred within the State of California.

14       14.    This Court has personal jurisdiction over Defendant STV, Inc., because of its

15   conducting substantial business in the County of Los Angeles, State of California.

16                          **GENERAL ALLEGATIONS**

17       15.    The LA Metro project is a multi-year and multi-billion-dollar construction project

18   intended to bring rail line transit to Los Angeles. The project has under construction since 2019

19   and is expected to continue construction through at least 2027. The project includes building above

20   ground stations at various points throughout the city, where passengers will enter and exit the rail

21   line. As part of the project, numerous train stations are being built which require rigid adherence

22   to City safety standards and best engineering and design practices. The reason for this rigidity is

23   to ensure that passengers and the general public are kept safe from any potentially dangerous

24   premises.

25       16.    The Plaintiffs were each hired by STV to perform engineering and design services

26   to ensure that the public and all visitor to Los Angeles enjoy the highest level of safe travel when

27   riding the LA metro. Each Plaintiff dedicated themselves to their job, and always put safety and

28   sound design at the forefront of their work.

**COMPLAINT**
EXHIBIT A

SCHEIN LAW GROUP

17.     STV has been contracted to perform design and construction on the LA Metro project.  STV is a large nation-wide construction corporation, which operates and manages projects throughout the United States.  According to STV's website:

> Founded more than 100 years ago, STV is a leader in providing architectural, engineering, planning, environmental, and construction management services for transportation systems, infrastructure, buildings, energy, and other facilities. Through our commitment to quality and innovation, we are creating a better future. [https://www.stvinc.com]

18.     STV also promotes itself as a leader in "Diversity, Equity and Inclusion." According to STV's website:

> This is an exciting time for STV, one of change and growth. A growth that is possible by having a diverse and inclusive culture. Our workforce thinks, acts, and looks differently than those of generations past. We commit to bringing together and building on the many strengths of our talented employees, striving for excellence now and in our future. We are fully committed to expanding our culture of diversity and inclusion, one that will reflect the clients we serve and the communities we work in. [https://www.stvinc.com/diversityandinclusion]

19.     Plaintiffs are professionals over the age of 40.  Mr. Al Mashat and Mrs. Al Mashat are Iraqi-born United States citizens.  Mr. Gharibian was born in Iran, and is a United States citizen. Nonetheless, the three were the only persons of Middle Eastern descent targeted for termination by STV during a reduction in force in February 2022.

20.     Mr. Al-Mashat is licensed professional civil engineer with over 35-years of experience in transportation.  He specializes in design build projects and is highly skilled in preparing of all stages of design for compliance with city and state design criteria, policies, and engineering construction requirements.  Mr. Al-Mashat graduated from the University of Detroit in 1986, and completed his Master coursework at Wayne State University.  Mr. Al-Mashat has worked for major corporations such as AECOM, Parsons Transportation Group, and Parsons Brinckerhoff. Mr. Al-Mashat has focused exclusively on civil design for mass transit for his long and successful career.

21.     Mr. Gharibian has been a licensed professional civil engineer for more than 30 years,

SCHEIN LAW GROUP

1   including working as a senior civil engineer.  Mr. Gharibian worked on various public transit

2   projects, including for the Los Angeles County Metropolitan Transportation Authority, METRO

3   Orange Line – Canoga Extension Engineering Services, and Southern California Regional Rail

4   Authority.

5          22.    In October 2019, Mr. Al-Mashat was hired by STV as a Senior Project Manager.  At

6   the time, he was assigned to work on the westside purple line extension section-2 (Century City

7   Constellation Station) Pkg's 2B temp roadway and 2F street restorations (the "Project").  Mr. Al

8   Mashat was a Senior Project Manager working under the supervision of Satish Mysore, Engineering

9   Director.  Shortly after Mr. Al-Mashat joined STV, Mr. Gharibian also joined STV based on Mr.

10  Al-Mashat's recommendation.

11         23.    Mrs. Al-Mashat is a respected professional, with decades of experience.  Prior to

12  joining STV, she had worked as a senior designer at AECOM (and as a designer with STV before

13  that).  In 2020, STV recruited Mrs. Al-Mashat to re-join STV as a senior designer.  Since joining

14  STV in 2020, Mrs. Al-Mashat had worked in excess of 40 hours a week, often into the evenings

15  and weekends, without overtime pay and without fair compensation.  Her performance on the job

16  was excellent and always well received by her superiors.

17         24.    During 2019 and 2020 Mr. Al-Mashat and Mr. Gharibian worked closely with the

18  City of Los Angeles Bureaus of Engineering, and the client, Tutor Perini, to ensure that STV's

19  plans for the temporary roadway and street restorations complied with the City's standard safety

20  regulations and requirements.  Their work included fixing existing issues on Project section-2, and

21  designing the temporary roadway for the construction of the Century City/Constellation station.  In

22  November 2020, the City approved the temporary roadway designs and plans which were created

23  and drawn by Mr. Al-Mashat, Mr. Gharibian, and their team.

24         25.    In November of 2020, during the City's LABOE meeting, Mr. Curtis Tran (Chief

25  Engineer at LABOE) advised Mr. Mysore that Section 3 in Westwood/UCLA was "not going well."

26  Mr. Tran then asked that Mr. Al-Mashat's team be transferred to work on Section 3.  Mr. Tran

27  recognized that Mr. Al-Mashat and Mr. Gharibian had done an exceptional job completing the

28  engineering work for Section 2 and asked that they be transferred to Section 3 to clean up the issues

SCHEIN  LAW  GROUP

1    with that segment.

2        26.    Once the City approved the plans for Section 2 of the Project, Mr. Mysore and STV

3    transitioned Mr. Al-Mashat, Mr. Gharibian, and their team, to work on Section 3.  Their work was

4    to include designing and planning for the temporary roadway for the construction of the

5    Westwood/UCLA station.    The primary reason for Mr. Al-Mashat's and Mr. Gharibian's

6    reassignment from Section 2 to Section 3 was due to progress on Section 3 being stymied by STV's

7    existing team of engineers who were working on the Westwood/UCLA station.  STV instructed

8    Messrs. Mr. Al-Mashat and Mr. Gharibian to take control of the design and planning work for

9    Section 3 and to lead STV's team through the City's approval process.

10       27.    On December 15, 2021, Mr. Al-Mashat and Mr. Gharibian started working on

11   Section 3.  Immediately upon beginning work, Mr. Al-Mashat and Mr. Gharibian became aware

12   that Section 3 had been mismanaged while being supervised by Ken Taylor ("Mr. Taylor").  By

13   way of example, prior to assigning Mr. Al-Mashat and Mr. Gharibian to Section 3, STV used a

14   team of New York-based engineers to design and plan for the temporary roadway for the

15   Westwood/UCLA station.  However, upon information and belief, none of the New York-based

16   engineers were familiar with the City of Los Angeles' design and engineering requirements.  As a

17   result, none of the approximately eighty sets of plans they had drawn complied with the City's

18   requirements.

19       28.    Due to prior mismanagement, Mr. Al-Mashat and Mr. Gharibian were unable to use

20   the previously drawn plans and designs created by the New York-based team.  Instead, they had to

21   recreate from scratch in excess of forty sheets of designs and specifications for the temporary

22   roadway for the Westwood/UCLA station.  The amount of work and money that had been invested

23   and was unusable was greatly concerning to Mr. Al Mashat and Mr. Gharibian.

24       29.    On April 19, 2021, Mr. Al-Mashat and Mr. Gharibian received a new Organizational

25   Structure sheet from Tyler Bonstead, Vice President and Engineering Director for STV.  The new

26   structure assigned Robert Holmquist as the lead for the Civil Engineering Group, thus replacing

27   Mr. Satish Mysore.  The organization chart also listed Messrs. Al-Mashat and Gharibian as directly

28   reporting to Mr. Holmquist.

EXHIBIT A

30.     While working on the project for STV, Mr. Al-Mashat and Mr. Gharibian focused on finalizing a set of designs and plans for the temporary roadway that would meet the City's safety requirements and design practices.  STV, on the other hand, had a different agenda.  It was focused solely on satisfying the Project's general contractor.  On multiple occasions, STV would insist that certain "cost-saving" changes be made to the plans for the temporary roadway for the Westwood/UCLA station.

31.     Upon information and belief, STV would insist on these changes even when it knew that these changes violated the City's safety standards and design practices requirements.  Upon further information and belief, STV did not insist on making these changes to save the City (or the tax-payers') money.  Rather, the general contractor required these "cost-savings" changes to be made so it could maximize its profits, at the expense of public safety.  Mr. Al-Mashat, along with Mr. Gharibian, vociferously complained about and resisted these "cost-saving" changes.  Both men informed STV that, by acquiescing to the general contractor's demands, progress on Section 3 could be further delayed and public safety could be jeopardized.  Despite these complaints of endangering the public, STV insisted on making changes to the existing designs and plans for the temporary roadway for the Westwood/UCLA station.

32.     By way of example, in March 2021, Mr. Al-Mashat's team had a meeting with the BOE to present a 40-sheet design.  In the middle of the meeting, while Mr. Al-Mashat was presenting his designs, the contractor, Josh Escobar, asked Mr. Al-Mashat to stop presenting to the BOE and to instead have a private meeting with the designers.  Mr. Al-Mashat had been using city standard design criteria to create the new 40-sheets design, but the contractor instead asked Mr. Taylor to have a separate meeting with the designer to redesign and reduce the pavement, which would not comply with the city's normal design practices.  To Mr. Al-Mashat's knowledge, STV was specifically preparing plans that had not been approved by the BOE and without the BOE's knowledge.

33.     When their complaints were ignored, Mr. Al-Mashat and Mr. Gharibian did what STV instructed; they worked in the design changes for more than ten months without submitting designs to the City's BOE a single time.  Mr. Al-Mashat and Mr. Gharibian were, in short, being

1  told to keep the City in the dark and to represent in meetings that the engineering group was still

2  "finishing up IDR/CR" or "QA/QC," when in fact, plans were ready to go.

3        34.    Frustrated with the instructions to keep the city unaware of the status of the project,

4  which Mr. Al-Mashat believed to be a violation of safety standards, on October 2021, Mr. Al-

5  Mashat conducted a site visit at the Westwood/UCLA station.  To his surprise, construction of the

6  temporary roadway had already begun even though the City had not yet approved of the plans and

7  designs for Section 3.  To his further surprise and concern, the temporary roadway that was built at

8  the Westwood/UCLA station bore no resemblance to the temporary roadway that was designed by

9  Mr. Al-Mashat and Mr. Gharibian, or the one that was shown to the City.  Mr. Al-Mashat also

10  discovered that the pedestrian locations of the K-rail were completely incorrect places, and that the

11  sidewalk had been closed without properly notifying the city or Metro, and that the sidewalk and

12  K-rail did not align with ten months of design work.

13        35.    After speaking with Mr. Gharibian, Mr. Al-Mashat reported the discrepancy and

14  illegal construction to his supervisors and demanded to know why construction was allowed to

15  proceed in such a fashion.  This was particularly troubling because the contractor did not follow

16  the plans and designs drawn by Mr. Al-Mashat and Mr. Gharibian, and the construction work that

17  was done failed to meet the City's safety standards and requirements.

18        36.    Also in October 2021, Mr. Al-Mashat asked to speak privately with Mr. Holmquist

19  and Mr. Mysore.  During that meeting, Mr. Al-Mashat reported safety concerns about what he had

20  seen in the field.  He stated that it was his name on the designs that had been worked on for more

21  than ten months, and STV was not even building according to city standards.  He also complained

22  that Mr. Taylor should have ensured compliance with City standards when he was visiting the job

23  site on weekly basis, and he was failing to do so.  Moreover, Mr. Al-Mashat complained that Mr.

24  Taylor had never informed Mr. Al-Mashat of what was really occurring the job site.

25        37.    At the same time, Mr. Al-Mashat and Mr. Gharibian complained to Mr. Holmquist

26  and Mr. Taylor that the Segment -3 APDU54 and APDU70 street restorations, which had been

27  designed by the sub-engineering company, Tag Corp., also did not follow City design.  The two

28  informed STV that the designs deviated from LABOE standard requirements.  This work, too, was

SCHEIN LAW GROUP

1  done under the supervision of Mr. Taylor.  At all times, both men believed they we rereporting

2  violations of safety standards and were working in the best interest of the public good.

3       38.    In response to these repeated complaints, during meetings in November 2021, Mr.

4  Holmquist on behalf of STV, instructed Mr. Al-Mashat and Mr. Gharibian to leave the existing

5  plans and designs alone, and relieved both men of any further work on the Project.  Mr. Holmquist

6  then told Mr. Al-Mashat and Mr. Gharibian to submit fraudulent time sheets from November

7  through the end of their employment.  After reporting unsafe and non-compliant construction, Mr.

8  Al-Mashat and Mr. Gharibian were instructed to bill the entire month of November to unassigned

9  time or "STV University" (a continuing education program) instead of working on actual designs.

10  Mr. Holmquist instructed the two whistleblowers to report their time on the job as 40 hours a week

11  for STV University, instead of performing any engineering work.  This instruction continued

12  through January 2022, during which time the two were told not to do any work and instead to

13  submit fraudulent timesheets showing them attending continuing education courses.

14       39.    STV, through Mr. Holmquist, used this false time reporting to make it appear as if

15  Messrs. Al-Mashat and Gharibian were not performing actual engineering work, and to set the two

16  up for elimination. When Mr. Al-Mashat tried to submit accurate time sheets showing the work

17  that he had done, Mr. Holmquist rejected them, and told Mr. Al-Mashat he was to report 40 hours

18  a week to "STV University only," and instead of performing any engineering work.  At the time,

19  Mr. Al-Mashat could not know that Mr. Holmquist was setting him up to justify including him in

20  a RIF.

21       40.    Mr. Holmquist's dislike of the two men also manifested itself in harassing, racist,

22  and derogatory comments regarding Middle Easterner.  Mr. Al-Mashat and his wife are both Iraqi,

23  and both practicing Muslims, and Mr. Gharibian is Iranian born.  Mr. Holmquist liked to make fun

24  of Mr. Al-Mashat for his heritage, and often asked him if he would show up to work wearing

25  "Arabic clothing."  By way of further example, on another occasion, during a staff meeting, Mr.

26  Holmquist pointed to a watch that Mr. Al-Mashat had received as a gift.  In front of his coworkers,

27  Mr. Holmquist made fun of Mr. Al-Mashat, saying he would need to hire someone and pay them

28  $2,000 just to read the complicated watch for him.

41.     After months of showing no work on the books for Mr. Al-Mashat and Mr. Gharibian, in February 2022, STV terminated Mr. Al-Mashat and Mr. Gharibian, claiming they were part of a reduction in force that affected employees. Tellingly, the reduction in force was premised on terminating persons who had lower hours or no work to perform.  Mr. Holmquist's instruction to both whistleblowers was intended to create a pretext to terminate them, based on the false reports showing there was no work for them to perform.

42.     Under the guise of a reduction in force, the two whistleblowers, and Mrs. Al Mashat, were suddenly let go without warning or explanation.  Tellingly, the three were the only employees of Middle Eastern descent.  Their firing came on the heels of Mr. Holmquist ridiculing Mr. Al Mashat for his "flashy" attire, and asking him if he would be wearing "Arab clothing" to the office. STV used the reduction in force as an excuse to fire the three Middle Eastern employees, in part because of their national origin.

43.     Further evidencing the pretextual basis for the firings, mere weeks after the supposed reduction in force, STV posted online advertisements for open positions for both men's jobs.  This job availability gives the lie to STV's stated reasons for termination.  STV put up advertisements for openings for engineers and for a designer – the exact jobs held by Mr. Al-Mashat, Mr. Gharibian, and Mrs. Al-Mashat, without reaching out to the three employees or offering them their jobs back.

44.     STV chose to terminate two loyal and high-performing employees in a thinly veiled effort to punish Mr. Al-Mashat and Mr. Gharibian because they dared to challenge STV's practices on Section 3 of the Project. At no time did STV investigate Mr. Al-Mashat's and Mr. Gharibian's claims of impropriety at the Westwood/UCLA station.  On the contrary, STV not only failed to protect Mr. Al-Mashat and Mr. Gharibian from retaliation, it actually retaliated against them both by terminating their respective employment. As a result, STV's malicious conduct has caused Mr. Al-Mashat and Mr. Gharibian to lose not only their respective positions, but also their individual wages, benefits, reputation, and wellbeing.

45.     STV extended its retaliation to Ms. Al Mashat as well. In February 2022, STV wrongfully terminated Mrs. Al-Mashat's employment.  Without warning or explanation, Mrs. Al-

SCHEIN LAW GROUP

1  Mashat was terminated at the same time as her husband.  At the time she was terminated, Ms. Al

2  Mashat had a full slate of work, and was working extra hours into the evening in order to handle

3  her extensive assignments.  Ms. Al Mashat was also aware of additional work that was anticipated

4  to keep her fully busy for months to come.

5      46.     Like Messrs. Al Mashat and Gharibian, STV claimed that Ms. Al Mashat did not

6  have enough work to warrant her employment.  The pretext was obvious, as Ms. Al Mashat had

7  enough work for several employees.  In short, in addition to retaliating against Mr. Al-Mashat and

8  Mr. Gharibian, STV chose to punish Mrs. Al-Mashat as well as further retaliation for her husband's

9  perceived transgressions.   STV's malicious actions have caused Mrs. Al-Mashat to lose not only

10  her position, but her wages, her benefits, her reputation, and her wellbeing.

11      47.     As a consequence of Defendants' conduct, Plaintiffs have suffered and will suffer

12  harm, including lost past and future income and employment benefits, damage to their career, and

13  lost wages, benefits, and applicable penalties, as well as interest on unpaid wages at the legal rate

14  from and after each payday on which those wages should have been paid, in a sum to be proven at

15  trial.

16      48.     As a consequence of Defendants' conduct, Plaintiffs have suffered and will suffer

17  psychological and emotional distress, humiliation, and mental and physical pain and anguish, in a

18  sum to be proven at trial.

19      49.     At the time of the termination of Plaintiffs' employment, Plaintiffs were owed wages

20  from Defendants.  Defendants failed to pay those wages in accordance with California *Labor Code*

21  § 200, *et. seq.*

22      50.     Defendants' conduct constitutes oppression, fraud, and/or malice under California

23  Civil Code section 3294 and, thus, entitles Plaintiffs to an award of exemplary and/or punitive

24  damages.

25      51.     Defendants' conduct was committed with malice within the meaning of California

26  Civil Code section 3294, including that (a) defendants acted with intent to cause injury to Plaintiffs

27  and/or acted with reckless disregard for Plaintiffs' injury, including by terminating Plaintiffs'

28  employment and/or taking other adverse job actions against Plaintiffs because of their age, gender,

SCHEIN LAW GROUP

1    race, national origin, ancestry, and/or (b) Defendants' conduct was

2    despicable and committed in willful and conscious disregard of Plaintiffs' rights, health, and safety,

3    including Plaintiffs' rights to be free of discrimination, harassment, retaliation, and wrongful

4    employment termination.

5        52.    In addition, and/or alternatively, Defendants' conduct was committed with

6    oppression within the meaning of California Civil Code section 3294, including that Defendants'

7    actions against Plaintiffs because of his of their age, gender, race, national origin, ancestry, and/or

8    good faith complaints, were "despicable" and subjected Plaintiffs to cruel and unjust hardship, in

9    knowing disregard of Plaintiffs' rights to a work place free of discrimination, harassment,

10   retaliation, and wrongful employment termination.

11       53.    In addition, and/or alternatively, Defendants' conduct, as alleged, was fraudulent

12   within the meaning of California Civil Code section 3294, including that Defendants asserted false

13   (pretextual) grounds for terminating Plaintiffs' employment and/or other adverse job actions,

14   thereby to cause Plaintiffs hardship and deprive them of legal rights.

15       54.    Plaintiffs have incurred and continue to incur legal expenses and attorneys' fees.

16       55.    Prior to filing this action, Plaintiffs exhausted their administrative remedies by filing

17   a timely administrative complaint with the Department of Fair Employment and Housing ("DFEH")

18   and receiving a DFEH right-to-sue letter.

19                          **FIRST CAUSE OF ACTION**

20             **Wrongful Termination n Violation of Public Policy**

21                        **(Against STV and Does 1-10)**

22       56.    Plaintiffs incorporate paragraphs 1 through 54 above as though fully set forth herein.

23       57.    Defendants wrongfully terminated Plaintiffs' employment in violation of various

24   fundamental public policies underlying both state and federal laws. Specifically, Plaintiffs'

25   employment was wrongfully terminated in part because of their protected statuses, including race,

26   national origin, and good faith complaints. These actions were in violation of FEHA, the California

27   Constitution, and California Labor Code sections 1102.5, .

28       58.    As a proximate result of Defendants' wrongful termination of Plaintiffs'

SCHEIN LAW GROUP

1  employment in violation of fundamental public policies, Plaintiffs have suffered and continue to

2  suffer humiliation, emotional distress, and mental and physical pain and anguish, all to their damage

3  in a sum according to proof.

4      59.    As a result of Defendants' wrongful termination of Plaintiffs' employment,

5  Plaintiffs have suffered general and special damages in sums according to proof.

6      60.    Defendants' wrongful termination of Plaintiffs' employment was done intentionally,

7  in a malicious, fraudulent, oppressive, fraudulent manner, entitling Plaintiffs to punitive damages.

8

9                        **SECOND CAUSE OF ACTION**

10           **Wrongful Termination in Violation of Labor Code § 1102.5**

11                     **(Against STV and Does 1 to 10)**

12     61.    Plaintiffs incorporate paragraphs 1 through 54 above as though fully set forth herein.

13     62.    At all times relevant hereto, STV employed the Plaintiffs.

14     63.    Messrs. Al-Mashat and Gharibian reported illegal, unsafe, and non-compliant

15  design and construction practices.   The reports were made to persons with authority over the

16  Plaintiffs and with authority to investigate, discover, and correct the violations.

17     64.    Messrs. Al-Mashat and Gharibian had reasonable cause to believe that their reports

18  and complaints disclosed a violation of local and state laws and regulations.

19     65.    Upon information and belief, Plaintiffs' employment was terminated by STV in part

20  because of Messrs. Al-Mashat and Gharibian's good faith complaints and disclosure of violations,

21  or potential violations, of local and state laws and regulations.

22     66.    As a proximate result of Defendants' wrongful termination of Plaintiffs'

23  employment, Plaintiffs have suffered and continue to suffer humiliation, emotional distress, and

24  mental and physical pain and anguish, all to their damage in a sum according to proof.

25     67.    As a result of Defendants' wrongful termination of their employment, Plaintiffs

26  have suffered general and special damages in sums according to proof.

27     68.    Defendants' wrongful termination of Plaintiffs' employment was done intentionally,

28  in a malicious, fraudulent, oppressive, fraudulent manner, entitling Plaintiffs to punitive damages.

SCHEIN LAW GROUP

### THIRD CAUSE OF ACTION

**Discrimination on the Basis of Race, National Origin, Ancestry**

**(Against STV and Does 1-10)**

69.    Plaintiffs incorporate paragraphs 1 through 54 above as though fully set forth herein.

70.    At all times herein mentioned, FEHA, Government Code section 12940, was in full force and effect and was binding on Defendants.  This statute requires Defendants to refrain from discriminating against any employee based on their race, national origin, or ancestry.  Within the time provided by law, Plaintiffs filed a complaint with the DFEH, in full compliance with administrative requirements, and received right-to-sue letters.

71.    During Plaintiffs' employment with Defendants, Defendants, through their supervisors, engaged in actions that had a negative impact on the treatment of employees who were of Middle-Eastern descent.  Specifically, defendants harassed, discriminated against, and took other adverse job actions, including termination, against employees of Middle-Eastern race, national origin, or ancestry, with greater frequency than non- Middle-Eastern employees, and gave better jobs and benefits to non-Middle-Eastern employees.

72.    During Plaintiffs' employment with Defendants, Defendants intentionally engaged in race, national origin, or ancestry discrimination, by harassing, discriminating against, taking adverse job actions against, and discharging employees of Middle-Eastern race, national origin, or ancestry, with greater frequency than other employees.  During Plaintiffs' employment with Defendants, Defendants had a pattern and practice of discriminating against employees of Middle-Eastern race, national origin, or ancestry.

73.    Plaintiffs' were qualified employees at the time of the termination of their employment, and they were all of Middle-Eastern descent.

74.    Defendants, through their managers and supervisors, made a number of comments to and about Middle-Eastern persons that exhibited racist motivations, intentions, and consciousness.  Plaintiffs believe, and on that basis allege, that Defendants' real motivation was to discharge them because of their being of Middle-Eastern descent.

75.    On the basis of the above, Plaintiffs' believe and allege that their race, national

EXHIBIT A

1   origin, and ancestry, was a substantial motivating reason in Defendants' termination of their

2   employment.

3       76.     As a proximate result of Defendants' willful, knowing, and intentional

4   discrimination against Plaintiffs, Plaintiffs have sustained and continue to sustain substantial losses

5   of earnings and other employment benefits.

6       77.     As a proximate result of defendants' willful, knowing, and intentional

7   discrimination against Plaintiffs, Plaintiffs have sustained and continue to suffer humiliation,

8   emotional distress, and mental and physical pain and anguish, all to their damage in a sum according

9   to proof.

10      78.     Defendants' discrimination was done intentionally, in a malicious, oppressive

11  manner, entitling Plaintiffs to punitive damages.

12      79.     Plaintiffs have incurred and continue to incur legal expenses and attorneys' fees.

13  Plaintiffs are at present unaware of the precise amounts of these expenses and fees and will seek

14  leave of court to amend this Complaint when the amounts are fully known.

15                          **FOURTH CAUSE OF ACTION**

16      **Harassment on the Basis of Race, National Origin, and Ancestry**

17                     **(Against All Defendants and Does 1-10)**

18      80.     Plaintiffs incorporate paragraphs 1 through 54 above as though fully set forth herein.

19      81.     At all times herein mentioned, FEHA, Government Code section 12940(j)(1) and

20  12940(j)(3), was in full force and effect and was binding on Defendants.  This statute requires

21  Defendants to refrain from harassing any employee because of their race, national origin, or

22  ancestry.  Within the time provided by law, Plaintiffs filed complaints with the DFEH, in full

23  compliance with administrative requirements, and received right-to-sue letters.

24      82.     Defendants engaged in actions to harass Plaintiffs because of their race, national

25  origin, or ancestry.  Defendants directed comments to Plaintiff Mr. Al-Mashat, as was stated above,

26  shunned the Plaintiffs in daily activities, refused to provide them with work to perform, and took

27  other negative job related actions directed at Plaintiffs.

28      83.     As a proximate result of Defendants' willful, knowing, and intentional harassment,

SCHEIN LAW GROUP

---

15

**COMPLAINT**

EXHIBIT A

1   Plaintiffs have sustained damages in a sum according to proof.

2        84.    As a proximate result of Defendants' willful, knowing, and intentional harassment,

3   Plaintiffs have suffered and continues to suffer humiliation, emotional distress, and mental and

4   physical pain and anguish, all to their damage in a sum according to proof.

5        85.    Defendants' harassment of Plaintiffs was done intentionally, in a malicious, op-

6   pressive manner, entitling Plaintiffs to punitive damages.

7        86.    Plaintiffs have incurred and continue to incur legal expenses and attorneys' fees.

8   Plaintiffs are at present unaware of the precise amounts of these expenses and fees and will seek

9   leave of court to amend this Complaint when the amounts are fully known.

10   **FIFTH CAUSE OF ACTION**

11   **Discrimination on the Basis of Age**

12   **(Against All Defendants, and Does 1 to 10, Inclusive)**

13        87.    Plaintiffs incorporate paragraphs 1 through 54 above as though fully set forth herein.

14        88.    At all times herein mentioned, FEHA, Government Code section 12940, was in full

15   force and effect and was binding on Defendants. This statute requires Defendants to refrain from

16   discriminating against any employee based on their age. Within the time provided by law, Plaintiffs

17   filed a complaint with the DFEH, in full compliance with administrative requirements, and received

18   right-to-sue letters.

19        89.    During Plaintiffs' employment with Defendants, Defendants, through their

20   supervisors, engaged in actions that had a negative impact on the treatment of employees who were

21   over the age of 40. Specifically, defendants discriminated against, and took other adverse job

22   actions, including termination, against employees over the age of 40, with greater frequency than

23   younger employees, and gave better jobs and benefits to younger employees.

24        90.    During Plaintiffs' employment with Defendants, Defendants intentionally engaged

25   in age discrimination, by discriminating against, taking adverse job actions against, and discharging

26   employees of over the age of 40 with greater frequency than other employees. During Plaintiffs'

27   employment with Defendants, Defendants had a pattern and practice of discriminating against

28   employees over the age of 40.

16
**COMPLAINT**

**EXHIBIT A**

SCHEIN LAW GROUP

91.   Plaintiffs' were qualified employees at the time of the termination of their employment, and they were all over the age of 40.

92.   Defendants, through their managers and supervisors, exhibited ageist motivations, intentions, and consciousness.  Plaintiffs believe, and on that basis allege, that Defendants' real motivation was to discharge them because of their age.

93.   On the basis of the above, Plaintiffs' believe and allege that their age was a substantial motivating reason in Defendants' termination of their employment.

94.   As a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiffs, Plaintiffs have sustained and continue to sustain substantial losses of earnings and other employment benefits.

95.   As a proximate result of defendants' willful, knowing, and intentional discrimination against Plaintiffs, Plaintiffs have sustained and continue to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to their damage in a sum according to proof.

96.   Defendants' discrimination was done intentionally, in a malicious, oppressive manner, entitling Plaintiffs to punitive damages.

97.   Plaintiffs have incurred and continue to incur legal expenses and attorneys' fees. Plaintiffs are at present unaware of the precise amounts of these expenses and fees and will seek leave of court to amend this Complaint when the amounts are fully known.



## SIXTH CAUSE OF ACTION

### Failure to Prevent Discrimination and Harassment

### (Against STV and Does 1 to 10, Inclusive)

98.   Plaintiffs incorporate paragraphs 1 through 54 above as though fully set forth herein.

99.   At all times herein mentioned, FEHA, Government Code section 12940(k), was in full force and effect and was binding on Defendants. This statute states that it is an unlawful employment practice in California for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." Prior to filing the instant Complaint, Plaintiffs filed timely administrative charges with the DFEH and received right-to-sue letters.

EXHIBIT A

SCHEIN LAW GROUP

100.   During the course of Plaintiffs' employment, Defendants failed to prevent their employees from engaging in intentional actions that resulted in Plaintiffs' being treated less favorably because of Plaintiffs' protected status (i.e., age, race, national origin, ancestry, and/or complaints). During the course of Plaintiffs' employment, Defendants failed to prevent their employees from engaging in unjustified employment practices against employees in such protected classes. During the course of Plaintiffs' employment, Defendants failed to prevent a pattern and practice by their employees of intentional discrimination and harassment on the bases of age, race, national origin, ancestry, and/or other protected statuses or protected activities.

101.   Plaintiffs believe, and on that basis allege, that their age, race, national origin, ancestry, and/or other protected statuses or protected activities were substantial motivating factors in Defendants' employees' discrimination against and harassment of them.

102.   As a proximate result of Defendants' willful, knowing, and intentional misconduct, Plaintiffs have sustained and continue to sustain substantial losses of earnings and other employment benefits.

103.   As a proximate result of Defendants' willful, knowing, and intentional misconduct, Plaintiffs have suffered and continue to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to their damage in a sum according to proof.

104.   Plaintiffs have incurred and continue to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), Plaintiffs are entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

105.   Defendants' misconduct was committed intentionally, in a malicious, despicable, oppressive, fraudulent manner, entitling Plaintiffs to punitive damages against Defendants.

### SEVENTH CAUSE OF ACTION

**Failure to Pay Compensation Due Upon Termination and Waiting Time Penalties**

**(Against All Defendants and DOES 1-10)**

106.   Plaintiffs incorporate paragraphs 1 through 54 above as though fully set forth herein.

107.   California Labor Code §§ 200, 201, 202, 204(a), 212, and 215, 221, require Defendants to pay all wages due and owing to Plaintiffs both during their employment, and

18

COMPLAINT

EXHIBIT A

SCHEIN LAW GROUP

SCHEIN LAW GROUP

1   immediately upon the termination of their employment. The amount of wages owed to Plaintiffs

2   will be stated according to proof at trial. California Labor Code section §203 provides that if an

3   employer willfully fails to pay compensation promptly upon discharge or resignation, as required

4   by sections 201 and 202, then the employer is liable for waiting time penalties in the form of

5   continued compensation up to thirty workdays.

6       108.   Defendants willfully failed to pay Plaintiffs all wages due and owing to them upon

7   the termination of their employment, including, but not limited to, accrued vacation pay and sick

8   pay, as required by the California Labor Code. As a result, Defendants are liable to Plaintiffs for

9   all wages due, including waiting time penalties, reasonable attorneys' fees, and costs of suit.

10       109.   As a result of Defendants' conduct as alleged herein, Plaintiffs have been required

11   to retain counsel to represent them. Plaintiffs will continue to incur attorneys' fees and costs in an

12   amount within the jurisdictional limits of this Court. Plaintiffs are therefore entitled to an award

13   based on the reasonable attorneys' fees necessarily incurred in the preparation and prosecution of

14   this action, pursuant to *Labor Code* section 218.5(a), which amount will be stated according to

15   proof at trial.

16   <u>**EIGHTH CAUSE OF ACTION**</u>

17   **Unfair Competition**

18   **(Against STV and DOES 1-10)**

19       110.   Plaintiffs incorporate paragraphs 1 through 54 above as though fully set forth herein.

20       111.   Defendants have engaged in Unfair Competition in violation of Business and

21   Professions Code Sections 17200 et seq. by engaging in activities that are unlawful, unfair, and

22   fraudulent as alleged herein.

23       112.   As a proximate and legal result of Defendants' aforesaid wrongful conduct,

24   Plaintiffs have been harmed in that Plaintiffs have suffered the loss of past and future wages and

25   earnings, benefits, and such additional amounts of money Plaintiffs would have received if

26   Defendants had not terminated Plaintiffs and engaged in unfair competition. As a result of such

27   wrongful termination and unfair competition and its consequences, Plaintiffs have suffered

28   additional economic harm and damages, to be stated according to proof at trial.

19

**COMPLAINT**

EXHIBIT A

## NINTH CAUSE OF ACTION

### Violation of Labor Code Sections 432 and 1198.5

### (Against All Defendants and DOES 1-10)

113.    Plaintiffs incorporate paragraphs 1 through 54 above as though fully set forth herein.

114.    On April 29, 2022, Plaintiffs all requested their employment documents from Defendants as follows:

1. <u>A complete copy of each Plaintiff's personnel file.</u>  Pursuant to *California Labor Code* § 1198.5, every current or former employee has the right to inspect and receive a copy of his or her personnel records, no later than 30 days from the date of a written request.  The following categories of records are defined as personnel records within the meaning of section 1198.5: "those that are used or have been used to determine that employee's qualifications for employment, promotion, additional compensation, or termination or other disciplinary action." *Wellpoint Health Networks, Inc. v. Super. Ct.*, 59 Cal.App.4th 110 (1997).

2. <u>A copy of every document each Plaintiff signed during his/her employment with STV.</u>  Pursuant to *California Labor Code* § 432, an employer must provide to an employee copies of every document he or she signed in obtaining or holding his or her employment.  Such documents would include, but are not limited to, any offer letter, application, W-2s, and other signed documents, including memos and reimbursement request forms, expense documentation, evaluations, and all of Ms. Chaplin's compensation agreements.

3. <u>Copies of all of wage statements for each Plaintiff.</u>  Pursuant to California *Labor Code* § 226, all documents and complete wage statements for each and every wage, including gross wages earned, all deductions, and any and all written orders of the employee authorizing the deductions, net wages earned, and the inclusive dates of the period for which the employee is paid.  In California, vacation accruals are considered wages, and any vacation information must be provided as well.

4.  All files and documents (including STV's internal communications) generated or considered in connection with any discipline or evaluation pertaining to Mr. Al-Mashat, Mr. Gharibian, and Mrs. Al-Mashat.

5.  All documents and communications (including STV's internal communications) referring or relating to any complaints made by Mr. Al-Mashat, Mr. Gharibian, and Mrs. Al-Mashat.

COMPLAINT

EXHIBIT A

6.  All documents and communications (including STV's internal communications) referring or relating to wages paid to Mr. Al-Mashat, Mr. Gharibian, and Mrs. Al-Mashat.

115.    Pursuant to Labor Code sections 1198.5 and 432, Defendants were required to provide complete copies of all requested documents within 30 days.   Defendants failed and intentionally refused to provide the documents requested.

116.    Due to Defendants violations, Plaintiffs are entitled to statutory penalties, injunctive relief, and fees and costs in an amount to be proven.

### DEMAND FOR JURY TRIAL

117.    Plaintiffs hereby demand a trial by jury.

### PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment against Defendant and DOES 1 through 10, as follows:

(a)     For economic damages for loss of past and future earnings, including, but not limited to earned and unpaid wages, commissions, continuing commissions after termination, expenses, vacation pay, as well as a loss of earning capacity, just promotions, advancement and employment benefits, past and future medical care, job search costs, other economic damages, including incidental fees and/or other costs, and/or other economic losses, all in excess of this Court's minimum jurisdictional limits and according to proof;

(b)     For general damages for pain and suffering, mental and emotional trauma and anguish, and for the loss of enjoyment of the activities of life, according to proof;

(c)     For attorneys' fees, as provided by applicable provisions of the FEHA, the California *Labor Code*, and/or other statutes, according to proof;

(d)     For punitive damages, as against each named Defendant, according to proof;

(e)     For costs of suit, and according to proof;

(f)     For penalties as provided for by the California *Labor Code*, including sections 210, 225.5, 226.3, 558, 1174.5, 1197.1, for violations of California Labor Code sections 201, 202, 203,



1  204, 221, 224, 226.6(a), 226.7, 351, 432, 510, 512(a), 1174(d), 1182.12, 1194, 1197, 1197.1, 1198

2  and 1198.5.

3       (g)     For an accounting;

4       (h)     For prejudgment interest from the first date and highest rate allowed by law, and

5  according to proof;

6       (i)     For injunctive relief; and

7       (j)     For such other and further relief as the Court deems just and proper.

8

9

10  Dated: August 3, 2022

11

12                         By:

13                            JOSHUA D. SCHEIN

14                            JASON LIANG
                          ATTORNEYS FOR PLAINTIFFS

15                            JAMAL AL-MASHAT, ALBERD GHARIBIAN,
                          AND MUNA AL-MASHAT

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT**

**EXHIBIT A**

SCHEIN LAW GROUP

# EXHIBIT B

EXHIBIT B

Electronically FILED by Superior Court of California, County of Los Angeles on 08/31/2022 12:03 PM Sherri R. Carter, Executive Officer/Clerk of Court, by J. Tang,Deputy Clerk

1   SEYFARTH SHAW LLP
    Diana Tabacopoulos (SBN 128238)
2   dtabacopoulos@seyfarth.com
    Jessica C. Koenig (SBN 340974)
3   jkoenig@seyfarth.com
    2029 Century Park East, Suite 3500
4   Los Angeles, California 90067-3021
    Telephone:    (310) 277-7200
5   Facsimile:    (310) 201-5219

6   Attorneys for Defendant
    STV INCORPORATED

7

8

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                FOR THE COUNTY OF LOS ANGELES

11

12  JAMAL AL MASHAT, an individual, ALBERD          Case No.: 22STCV25069
    GHARIBIAN, an individual, and MUNA AL-
13  MASHAT, an individual,                          Hon. Maureen Duffy-Lewis, Dept. 38

14              Plaintiffs,                          **DEFENDANT'S ANSWER TO
                                                     PLAINTIFFS' UNVERIFIED
15  STV INCORPORATED, a California Corporation;      COMPLAINT**
    and DOES 1 through 10,
16              Defendants.                          Complaint Filed:  August 3, 2022
                                                     Trial Date:       None Set
17

18

19

20

21

22

23

24

25

26

27

28

_____
              DEFENDANT'S ANSWER TO PLAINTIFFS' UNVERIFIED COMPLAINT

86089160v.2

EXHIBIT B

1    Defendant STV INCORPORATED ("Defendant") hereby answers the unverified Complaint
2    ("Complaint") filed by Plaintiffs JAMAL AL-MASHAT, ALBERD GHARIBIAN, and MUNA AL-
3    MASHAT (collectively, "Plaintiffs") as follows:

4                               **GENERAL DENIAL**

5            Pursuant to California Code of Civil Procedure section 431.30(d), Defendant denies, generally
6    and specifically, each and every allegation, and each purported cause of action contained in Plaintiffs'
7    Complaint.  Defendant further denies, generally and specifically, that Plaintiffs have been damaged in
8    any amount, or at all, by reason of any alleged act or omission of Defendant.

9            **SEPARATE AFFIRMATIVE AND OTHER DEFENSES**

10           In further answer to Plaintiffs' Complaint, Defendant states as follows for its affirmative and
11   other defenses.  In asserting these defenses, Defendant does not assume the burden of proof as to matters
12   that, pursuant to law, are Plaintiffs' burden to prove.

13                    **FIRST AFFIRMATIVE OR OTHER DEFENSE**
14
15       **(Failure To State A Cause Of Action Upon Which Relief May Be Granted)**
16   1.       Plaintiffs' Complaint as a whole, and each purported cause of action alleged therein, fails
17   to state facts sufficient to constitute a cause of action against Defendant upon which relief may be
18   granted.

19
20                   **SECOND AFFIRMATIVE OR OTHER DEFENSE**
21                                  **(Estoppel)**
22   2.       Plaintiffs are estopped from asserting the causes of action in the Complaint to the extent
23   they have engaged in conduct that forms the basis for estoppel.

24
25                    **THIRD AFFIRMATIVE OR OTHER DEFENSE**
26                                  **(Laches)**
27   3.       Plaintiffs' claims are barred, in whole or in part, by the doctrine of laches, to the extent
     they have unreasonably delayed filing the Complaint.
28

2
DEFENDANT'S ANSWER TO PLAINTIFFS' UNVERIFIED COMPLAINT
86089160v.2

**FOURTH AFFIRMATIVE OR OTHER DEFENSE**

**(Waiver)**

4.      Plaintiffs' claims are barred, in whole or in part, by the doctrine of waiver to the extent that  Plaintiffs, by their own conduct and actions, have waived the right, if any, to assert the claims alleged in the Complaint.

**FIFTH AFFIRMATIVE OR OTHER DEFENSE**

**(Unclean Hands)**

5.      Plaintiffs are precluded from maintaining the Complaint, and each purported cause of action alleged therein, to the extent Plaintiffs engaged in conduct showing unclean hands.

**SIXTH AFFIRMATIVE OR OTHER DEFENSE**

**(Statutes Of Limitations)**

6.      Plaintiffs' Complaint, and each purported cause of action alleged therein, is barred by the applicable statutes of limitations, including, but not limited to California Code of Civil Procedure sections 312, 335.1, 337, 338, 339, 340, and 343, and California Labor Code sections 201, 202, 203, 204, 226, 226.7, 246, 247.5, 248.1, 248.2, 510, 512, 1174, and 1198.  This specifically includes Plaintiffs' claims for violations of the FEHA, California Government Code Section 12900 *et seq.* and 12940, and any claim for violation of public policy.

**SEVENTH AFFIRMATIVE OR OTHER DEFENSE**

**(Res Judicata And Collateral Estoppel)**

7.      Plaintiffs' Complaint, and each purported cause of action alleged therein, is barred by the doctrines of res judicata and/or collateral estoppel, to the extent Plaintiffs have asserted the same claims in any prior legal or administrative proceeding, and did not prevail on such claim.

3

DEFENDANT'S ANSWER TO PLAINTIFFS' UNVERIFIED COMPLAINT

86089160v.2

**EIGHTH AFFIRMATIVE OR OTHER DEFENSE**

**(Unjust, Arbitrary, And Oppressive, Or Confiscatory Penalties)**

8.      Plaintiffs are not entitled to recover any statutory penalties, because, under the circumstances of this case, any such recovery would be unjust, arbitrary, and oppressive, or confiscatory.  Alternatively, any such penalty recovered must be reduced on these grounds.

**NINTH AFFIRMATIVE OR OTHER DEFENSE**

**(Due Process/Excessive Fine/Unconstitutional)**

9.      Although Defendant denies that it has committed or has responsibility for any act that could support the recovery of penalties in this lawsuit, if and to the extent any such act or responsibility is found, recovery of penalties against Defendant is unconstitutional under numerous provisions of the United States Constitution and the California Constitution.

**TENTH AFFIRMATIVE OR OTHER DEFENSE**

**(Failure To Exhaust Administrative Remedies)**

10.     Plaintiffs' Complaint, and each purported cause of action therein, is barred to the extent Plaintiffs failed to exhaust their administrative remedies or to comply with the statutory prerequisites for bringing suit before filing the Complaint.

**ELEVENTH AFFIRMATIVE OR OTHER DEFENSE**

**(Setoff and Recoupment)**

11.     To the extent a court holds that Plaintiffs are entitled to damages or penalties, which is specifically denied, Defendant is entitled under the equitable doctrine of setoff and recoupment to offset all overpayments or all obligations that Plaintiffs owe to Defendant against any judgment that may be entered against Defendant.

DEFENDANT'S ANSWER TO PLAINTIFFS' UNVERIFIED COMPLAINT

86089160v.2

**TWELFTH AFFIRMATIVE OR OTHER DEFENSE**

**(No Injury as a Result of Alleged Violations of Labor Code)**

12.     Plaintiffs have suffered no injury as a result of any alleged violations of the California Labor Code and therefore are barred from recovering penalties.

**THIRTEENTH AFFIRMATIVE OR OTHER DEFENSE**

**(Accord and Satisfaction)**

13.     Plaintiffs' Complaint is barred by the doctrine of accord and satisfaction.  Specifically, Plaintiffs were properly and fully compensated for all work performed for Defendant, and their acceptance of these payments constituted an accord and satisfaction for all debts, if any, owed by Defendant to Plaintiffs.

**FOURTEENTH AFFIRMATIVE OR OTHER DEFENSE**

**(Release)**

14.     To the extent Plaintiffs have executed a release encompassing any of the allegations in the Complaint, their claims are barred by that release.

**FIFTEENTH AFFIRMATIVE OR OTHER DEFENSE**

**(Good Cause Existed)**

15.     Plaintiffs' purported causes of action fail to state claims upon which relief can be granted, because any decisions made with respect to Plaintiffs' employment were based upon good cause.

**SIXTEENTH AFFIRMATIVE OR OTHER DEFENSE**

**(Lack of Knowledge)**

16.     To the extent that any unlawful conduct occurred, which Defendant denies, Defendant took all reasonable steps to prevent the alleged unlawful conduct and was not aware of Plaintiffs' purported complaints of unlawful conduct.  Accordingly, Plaintiffs' claims are barred or, alternatively, Plaintiffs' relief is limited.

5

86089160v.2

EXHIBIT B

## SEVENTEENTH AFFIRMATIVE OR OTHER DEFENSE

### (Adequate Measures To Prevent Unlawful Discrimination, Harassment, Or Retaliation)

17.     Plaintiffs' claims, in whole or in part, are barred because Defendant had already instituted and implemented policies to prohibit unlawful discrimination, harassment, or retaliation.  Defendant published these policies for its employees.  Defendant's policies provided numerous methods to internally complain or raise issues of unlawful discrimination, harassment, or retaliation based on any legally protected categories.  Defendant's policies provided for no tolerance for unlawful discrimination, harassment, or retaliation against any employee who complained or raised an issue of unlawful behavior or unwanted conduct.

## EIGHTEENTH AFFIRMATIVE OR OTHER DEFENSE

### (Failure To Exercise Reasonable Preventive Corrective Opportunities)

18.     To the extent any of the Defendant's employees or agents engaged in unlawful behavior toward Plaintiffs, Defendant is not liable for any such discrimination, harassment, or retaliation, or Plaintiffs' damages must be reduced, because Defendant exercised reasonable care to prevent and promptly correct any such behavior, and Plaintiffs unreasonably failed to take advantage of any preventive or corrective opportunities provided or to otherwise avoid harm.  *See, e.g.*, *State Dep't of Health Servs. v. Superior Ct.*, 31 Cal. 4th 1026, 1040-1041 (2003) (holding that "[t]he employer is liable for harassment by a nonsupervisory employee only if the employer (a) knew or should have known of the harassing conduct and (b) failed to take immediate and appropriate corrective action").

## NINETEENTH AFFIRMATIVE OR OTHER DEFENSE

### (Actions Taken For Legitimate, Non-Discriminatory, Non-Harassing, Non-Retaliatory Reasons And No Pretext Can Be Shown)

19.     Plaintiffs' claims are barred, because any alleged actions or decisions by Defendant taken with respect to Plaintiffs' alleged employment were for legitimate, non-discriminatory, non-harassing,

non-retaliatory reasons, and Plaintiffs cannot show that Defendant's actions were a pretext for

discrimination, harassment, retaliation, or to mask an otherwise unlawful motive.

## TWENTIETH AFFIRMATIVE OR OTHER DEFENSE

### (Failure To Mitigate Damages)

20.    Plaintiffs have failed to mitigate or make a reasonable attempt to mitigate their damages

as required by law.

## TWENTY-FIRST AFFIRMATIVE OR OTHER DEFENSE

### (Avoidable Consequences Doctrine)

21.    Plaintiffs' Complaint, and each purported cause of action alleged therein, is barred by the

avoidable consequences doctrine.

## TWENTY-SECOND AFFIRMATIVE OR OTHER DEFENSE

### (Mixed Motive)

22.    Plaintiffs' claims are barred to the extent that Plaintiffs demonstrate that their alleged

protected status or activities were a motivating factor for any challenged employment action, on the

grounds that Defendant would have taken the same action in the absence of such impermissible

motivating factor.

## TWENTY-THIRD AFFIRMATIVE OR OTHER DEFENSE

### (Business Judgment)

23.    Plaintiffs' claims are barred to the extent that a finding of discrimination, retaliation, or

harassment cannot be based on the belief that the alleged employer made an error in business judgment.

*Veronese v. Lucasfilm Ltd.*, 212 Cal. App. 4th 1 (2012), *as modified on denial of reh'g* (Dec. 28, 2012).

DEFENDANT'S ANSWER TO PLAINTIFFS' UNVERIFIED COMPLAINT

86089160v.2

EXHIBIT B

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TWENTY-FOURTH AFFIRMATIVE OR OTHER DEFENSE

**(Managerial Discretion & Immunity)**

24.    Plaintiffs' claims, in whole or in part, are barred to the extent that any and all decisions made and actions taken by and/or on behalf of Defendant were made and taken in the exercise of proper managerial discretion and in good faith.  Further, any injuries Plaintiffs sustained as a result of any action by Defendant is barred by the doctrine of managerial immunity.

## TWENTY-FIFTH AFFIRMATIVE OR OTHER DEFENSE

**(No Violation Of Public Policy)**

25.    Plaintiffs' claims are barred to the extent that their allegations of violations of public policy do not identify a fundamental public policy based on a constitutional, statutory, or regulatory provision applicable to Defendant.

## TWENTY-SIXTH AFFIRMATIVE OR OTHER DEFENSE

**(No Protected Activity)**

26.    Plaintiffs' claims are barred on the grounds that they have not engaged in a legally protected activity, including because they did not report unlawful misconduct to a governmental or law enforcement agency, pursuant to California Labor Code Section 1102.5.  To the extent that Plaintiffs raised any concerns, their issues were merely internal matters based on internal policies or procedures.

## TWENTY-SEVENTH AFFIRMATIVE OR OTHER DEFENSE

**(No Waiting Time Penalties Due To Failure To Show Willful And Intentional Violations)**

27.    Plaintiffs' claims for "waiting time" penalties for failure to pay all accrued wages at the time of termination is barred to the extent that Plaintiffs have failed to show that Defendant willfully, knowingly, or intentionally did not pay all accrued wages within the time required following any discharge or voluntary resignation of employment by Plaintiffs.  Plaintiffs thus cannot pursue any claims for "waiting time" penalties derived from California Labor Code § 203, if there is no underlying

DEFENDANT'S ANSWER TO PLAINTIFFS' UNVERIFIED COMPLAINT

86089160v.2

violation of this statute. *See, e.g.*, *Gonzalez v. Downtown LA Motors, LP*, 215 Cal. App. 4th 36, 54 (2013) ("As used in section 203, 'willful' . . . means that the employer intentionally failed or refused to perform an act which was required to be done."); *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1201 (2008) ("The settled meaning of 'willful,' as used in section 203, is that an employer has intentionally failed or refused to perform an act which was required to be done."); *Diaz v. Grill Concepts Servs., Inc.* 23 Cal. App. 5th 859, 868 (2018) (uncertainty in the law regarding PSL precludes a finding of willfulness and therefore the imposition of penalties.)

## **TWENTY-EIGHTH AFFIRMATIVE OR OTHER DEFENSE**

### **(No Waiting Time Penalties Based On A Good Faith Dispute)**

28. Plaintiffs' claims for "waiting time" penalties for failure to pay all accrued wages at the time of termination is barred to the extent that there was a good faith dispute as to whether such waiting time penalties were due. *See, e.g.*, *Diaz v. Grill Concepts Servs., Inc.*, 23 Cal. App. 5th 859, 868 (2018) ("[A]n employer's failure to pay is not willful [under Labor Code § 203] if that failure is due to . . . uncertainty in the law . . . or . . . the employer's good faith mistaken belief that wages are not owed . . ., which [creates a good faith dispute] when the employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee. A good faith dispute can exist even if the employer's proffered defense is ultimately unsuccessful . . . .") (internal citations omitted); *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1201, 1202 (2008) (finding that the employer had a good faith dispute: "A 'good faith dispute' that any wages are due occurs when an employer presents a defense based in law or fact which, if successful, would preclude any recovery on the part of the employee. The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist."); *Barnhill v. Robert Saunders & Co.*, 125 Cal. App. 3d 1, 8-9 (1981) ("[G]iven th[e] uncertainty [in the law], [the employer] should not be penalized for believing that setoff was proper and payment of wages not required. Accordingly, [the employer's] attempt to exercise a right to setoff was

1   not willful nonpayment of wages within the meaning of Labor Code section 203, and the imposition of

2   penalties was inappropriate."): *McPherson v EF Intercultural Foundation, Inc.,* 47 Cal. App. 5th, 243,

3   263, n 15 (2020) ("[B]ecause paid sick leave is not a form of wages, employers are not required to pay

4   employees their unused sick leave on termination, accrued or not.")  In addition, there is a good faith

5   dispute, given that Defendant contends that it paid Plaintiffs any wages that were owed at the time of

6   separation of their affiliation with Defendant.

7

8   **TWENTY-NINTH AFFIRMATIVE OR OTHER DEFENSE**

9   **(No Waiting Time Penalties Based On Alleged Violations Of Labor Code Sections 245-249)**

10   29.     Plaintiffs' claims for "waiting time" penalties for failure to pay all accrued wages at the

11   time of termination is barred to the extent that paid sick time under Labor Code section 246(l) is not a

12   form of wages as defined in Labor Code section 200.

13

14   **THIRTIETH AFFIRMATIVE OR OTHER DEFENSE**

15   **(Substantial Compliance)**

16   30.     Plaintiffs' Complaint, and each purported cause of action alleged therein, is barred in

17   whole or in part, because Defendant complied with their statutory obligations, and to the extent it is

18   determined that there was technical non-compliance, Defendant substantially complied with their

19   obligations and are not liable in whole or in part for the claims of Plaintiffs.

20

21   **THIRTY-FIRST AFFIRMATIVE OR OTHER DEFENSE**

22   **(Ratification)**

23   31.     Plaintiffs' Complaint, and each purported cause of action alleged herein, is barred by the

24   ground that Plaintiffs ratified Defendant's alleged actions.

25

26

27

28

DEFENDANT'S ANSWER TO PLAINTIFFS' UNVERIFIED COMPLAINT

86089160v.2

EXHIBIT B

## THIRTY-SECOND AFFIRMATIVE OR OTHER DEFENSE

### (Right To Raise Additional Defenses)

32.    Defendant hereby gives notice that it intends to rely upon such other and further affirmative or other defenses as may become available during discovery in this action and Defendant reserves the right to amend this Answer to assert any such defenses.

## THIRTY-THIRD AFFIRMATIVE OR OTHER DEFENSE

### (No Standing)

33.    Plaintiffs' Complaint, and each purported claim alleged therein, is barred to the extent they lack standing to pursue the claims for relief in the Complaint, including to the extent there is no private right of action to bring any claim or any relief alleged.

## PRAYER FOR RELIEF

WHEREFORE, Defendant prays for judgment as follows:

1.    That Plaintiffs take nothing by their Complaint;

2.    That judgment be entered in favor of Defendant and against Plaintiffs on the entire Complaint and on all causes of action alleged therein;

3.    That Defendant be awarded reasonable attorneys' fees according to proof;

4.    That Defendant be awarded their costs of suit incurred herein; and

5.    That Defendant be awarded such other and further relief as the Court may deem appropriate and proper.

DATED: August 31, 2022                   Respectfully submitted,

                                         SEYFARTH SHAW LLP


                                    By: _____
                                         Diana Tabacopoulos
                                         Jessica C. Koenig
                                         Attorneys for Defendant
                                         STV INCORPORATED

11

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA                    )
                                       )   SS

3

COUNTY OF LOS ANGELES                  )

4

     I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is 2029 Century Park East, Suite 3500, Los Angeles, California

5

90067-3021.  On August 31, 2022, I served the within document(s):

6

     **DEFENDANT'S ANSWER TO PLAINTIFFS' UNVERIFIED COMPLAINT**

7

8

☒   **(BY MAIL)** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California, addressed as set forth below.

9

☐   **(BY OVERNIGHT MAIL)** by placing the document(s) listed above in a sealed envelope or package provided by an overnight delivery carrier with postage paid on account and deposited

10

for collection with the overnight carrier at Los Angeles, California, addressed as set forth below.

11

☐   **(BY ELECTRONIC MAIL)** by transmitting the document(s) listed above, electronically, via the e-mail addresses set forth below.

12

13

Joshua D. Shein, Esq.               Attorneys for Plaintiffs Jamal Al Mashat,
Schein Law Group                 Alberd Gharibian, Muna Al Mashat
2029 Century Park East, Suite 400

14

Los Angeles, CA 90067
Telephone: (424) 355-8555          *JSchein@Scheinlawgroup.com*

15

Facsimile:  (424) 355-8087

16

Jason Liang, Esq.                  Attorneys for Plaintiffs Jamal Al Mashat,
Liang Ly LLP                     Alberd Gharibian, Muna Al Mashat

17

601 S. Figueroa St., Suite 1950
Los Angeles, CA 90017

18

Telephone: (213) 262-8000          *jliang@lianglyllp.com*
Facsimile:  (213) 335-7776

19

20

     I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with

21

postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day

22

after date of deposit for mailing in affidavit.

23

     I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

24

     Executed on August 31, 2022, at Los Angeles, California.

25

26

_____
                  Dana M. Hass

27

28

PROOF OF SERVICE

               **EXHIBIT B**